# CHARLESTON.

## SNUFFER v. SPANGLER.

Submitted February 13, 1917.   Decided February 20, 1917.

1. APPEAL AND ERROR—*Perfecting of Appeal—Time.*

> Under the provisions of Sec. 3, chapter 135 of the Code a petition for an appeal or writ of error must be presented within one year from the date of the judgment or decree complained of; and under the provisions of sec. 17 of said chapter the record of the proceedings in the court below upon which the judgment or decree complained of was entered must be filed in the office of the clerk of this court within one year and two months from the entry of such judgment or decree; and under the provisions of sec. 5 of said chapter, the party complaining may file his petition for an appeal or writ of error in the office of the clerk of the lower court, who shall thereupon transmit such petition with the original record

to the clerk of this court for consideration by this court upon such original record; *held* that where a party complaining of a judgment or decree files his petition with the clerk of the court below within one year from the date of the entry of such judgment or decree and procures said petition together with the original record to be transmitted to the clerk of this court and filed in his office within one year from such date, an appeal allowed thereon within one year and two months from the entry of the judgment or decree complained of will not be dismissed because a transcript of the record is not filed within such time.  (p. 629).

2.  FIXTURES—*What Constitutes.*

Machinery and like appliances used in connection with real estate become irremovable fixtures when the following conditions concur: first, such property must in some way be attached to the real estate, second, it must be adapted to the use being made of that part of the real estate to which it is attached; and third, it must be the intention of the party placing such property upon the real estate to make it a permanent accession to the freehold.  (p. 634).

3.  SAME—*What Constitutes—Property Attached to Realty.*

If such property is placed upon the real estate and both are used together for the accomplishment of the same purpose or design, that will be sufficient to meet the first requirement.  (p. 637).

4.  SAME—*Presumption—Rebuttal.*

In the case of grantor and grantee, if it be shown that the property is adapted to the use being made of the real estate, and is attached thereto, it will be presumed that it was intended to become a part of such real estate, but such presumption may be overcome by showing that the owners of the property treated it as personalty during the time it was being used in connection with the real estate.  (p. 637).

Appeal from Circuit Court, Raleigh County.

Injunction by J. F. Snuffer against W. H. Spangler. From a decree for plaintiff, defendant appeals.

*Reversed, injunction dissolved, bill dismissed.*

*W. H. Rardin* and *File & File,* for appellant.

*C. M. Ward* and *A. P. Farley,* for appellee.

RITZ, JUDGE:

At the threshold we are met with a motion to dismiss the appeal herein upon two grounds: First, that the appellant did not deposit with the clerk within six months after the cause had been docketed a sum sufficient to pay for printing the record; and, Second, because more than one year and two months had elapsed from the date of the decree appealed from before the record in the case was filed with the clerk of this court. The decree complained of was rendered on the 10th day of July, 1915. The petition for the appeal was filed in the office of the clerk of the circuit court of Raleigh county, and a bond given, with security approved by said clerk, on the 29th day of May, 1916, as provided by section 5 of chapter 135 of the Code. The original record, together with the petition for the appeal, was thereupon transmitted by the clerk of the circuit court of Raleigh county to the clerk of this Court, in accordance with the provisions of said section 5. Upon the receipt of said record by the clerk of this Court the same was considered by the Court, and on the 2d day of June, 1916, the appeal was granted, and the original record returned to the clerk of the circuit court of Raleigh county by the clerk of this Court, and at the same time the appeal was docketed in this court and the process issued thereon. It then became the duty of the clerk of the circuit court of Raleigh county to make a transcript of the record in order that the same might be printed. He did this and this transcript was filed in the office of the clerk of this Court on the 7th day of October, 1916. Appellant was thereupon notified that the cost of printing the record would be approximately $140.00, and on the 23d day of October, 1916, he deposited that sum with the clerk of this Court, and the record was printed and the printed record filed on the 3d day of January, 1917.

Section 17 of chapter 135 of the Code provides that no process shall issue upon any appeal, writ of error and supersedeas unless the record is delivered to the clerk of this Court within one year and two months from the entry of such decree or judgment. In this case the appellee contends that the transcript made out by the clerk of the circuit court is the record

referred to which must be presented within the one year and two months. We cannot give assent to this construction of the statute. Section 3 of chapter 135 provides that the petition for the appeal or writ of error must be presented and filed within one year from the date of the rendition of the judgment or the entry of the decree. The provisions of Sec. 3 and Sec. 17 read together mean that in a case where original papers are transmitted to the clerk of this Court these papers must be transmitted and be in the hands of the clerk of this Court, together with the petition for the writ of error or appeal, within one year from the entry of the judgment or decree complained of. In this case the petition for the appeal was filed within one year, and the original record was transmitted to the clerk of this Court and filed in his office within one year, so that the provisions of the statute in this regard have been complied with.

The other ground relied upon for dismissal of the appeal is that the money for printing the record was not deposited with the clerk within six months after the case was docketed. The record shows that the case was docketed on the 2nd day of June, 1916, and that the deposit for printing the record was made on the 23d day of October, 1916. This deposit seems to have been made within six months from the time the appeal was docketed, and to be a clear compliance with the provision of sec. 18 of chapter 135 of the Code. The motion to dismiss the appeal is therefore overruled.

The question for decision in this case involves the ownership of certain machinery claimed by both the plaintiff and the defendant situate in a factory in Raleigh county. It seems that about twenty-five years ago one C. Perry Spangler acquired a small tract of land in Raleigh county and erected thereon a building for the purpose of operating a woolen factory therein. He purchased certain machinery for the purpose, which is the subject of controversy in this case. This machinery consists, as appears from the testimony of C. Perry Spangler, of a wool picker, two cards, spinning machine, three looms and one reel. It is testified by C. Perry Spangler that this machinery stands in the factory upon

its own legs, and that the turbine wheel with which it is operated also stands on its own legs. The witness illustrates the way the machinery is placed in the mill by stating that it stands upon the factory floor as a desk stands upon the floor of a room. Exception is made in the case of the spinning machine which appears to be operated on a track placed in the floor of the building in the same manner that a railroad car is operated on a railroad track. None of these machines are in any way fastened to the building so that they can all be easily removed without damage or injury either to the machinery or to the building. It is material to state that the testimony shows that the machinery was assessed as personal property and taxes paid upon it as personal property.

In the month of May, 1899, C. Perry Spangler sold a half interest in the factory to one John Furrow and Mary E. Furrow, his wife, and by deed of the 10th of May, 1899, conveyed the half interest in the real estate to the said John Furrow and wife. Furrow sold the interest owned by him in the factory in the month of July, 1906, to M. A. Spangler, and conveyed the interest in the real estate to the said M. A. Spangler by deed dated the 24th day of July, 1906. In April, 1911, C. Perry Spangler sold the other one-half interest in the property to W. H. Spangler together with some other property, and by deed of April 29, 1911, he conveyed the real estate to W. H. Spangler. This sale to W. H. Spangler was made partly on credit, and to secure the deferred installments of purchase money W. H. Spangler and his wife executed to S. S. Sutphin, trustee, a deed of trust conveying this real estate, together with the other real estate purchased by him from C. Perry Spangler, as security for the deferred installments of purchase money. In none of these deeds is the machinery specifically mentioned. After making this deed M. A. Spangler died and his widow was appointed his administratrix. Appraisers were appointed and they appraised his personal property, including his one-half interest in the machinery in controversy in this case. Such personal property as was appraised was sold by the administratrix, and the one-half interest in this machinery was purchased by the defendant W. H. Spangler at the sale. The widow of M. A.

Spangler, before she completed the administration of the estate of her deceased husband, remarried. She thereupon resigned as administratrix of his estate, and T. T. Fitzpatrick was appointed in her stead. She had not yet disbursed the money received from the sale of the personal property, and when Fitzpatrick was appointed as such administrator this money was turned over to him, and was by him paid upon the debts of M. A. Spangler. It appears from the evidence that T. T. Fitzpatrick knew that this machinery had been sold by the administratrix, and that part of the money which she turned over to him was from the proceeds of this sale.

The personal estate of M. A. Spangler was not sufficient to pay his debts, and W. H. Spangler, having a debt against the estate, instituted a suit in chancery for the purpose of subjecting the real estate to the payment of the debts. An account was taken of the liens against the real estate, including the lien of the deed of trust aforesaid, as well as of the debts of M. A. Spangler remaining unpaid, and commissioners were appointed to make sale of the real estate in satisfaction of said liens and said debts. These special commissioners advertised for sale the interest of Spangler in this real estate, together with the other real estate owned by him, and made sale thereof, and it is testified by one of the commissioners who made the sale that he announced at the time the sale was made that the machinery was not being sold; that it had theretofore been sold by the administratrix, and would not be included in the sale being then made by the special commissioners. T. T. Fitzpatrick became the purchaser at this sale of the interest of M. A. Spangler in this factory real estate. He claims that he did not hear the announcement that the machinery was not being sold, but he was present at the sale of this machinery made by the administratrix and he also disbursed the proceeds of the sale made by the administratrix, and knew that it was proceeds of the sale of this machinery. Thereafter the special commissioner under the order of the court conveyed the real estate so sold and purchased by T. T. Fitzpatrick to him. In this deed there is no specific mention made of the machinery. Subsequently the plaintiff W. H. Spangler sold to T. T. Fitz-

patrick his half interest in this real estate, and by deed dated the 27th day of January, 1915, conveyed the same to said Fitzpatrick. At the time of the sale of this half interest by W. H. Spangler to Fitzpatrick, W. H. Spangler was arranging to erect another structure on some real estate owned by him for the purpose of operating a woolen factory, and it was agreed between him and Fitzpatrick that he might allow the machinery to remain in the building, the half interest in which was sold by him to Fitzpatrick, until such time as he had his building completed and ready to receive it, not to be later than the first day of July. This agreement and understanding is fully proven. Subsequently T. T. Fitzpatrick conveyed the whole of this real estate to the plaintiff J. F. Snuffer, Snuffer making a small cash payment and giving notes for the deferred payments, which notes are still in the possession of Fitzpatrick. When W. H. Spangler completed his building and was ready to remove the machinery Snuffer set up the claim that it belonged to the real estate, and denied his right to remove it from the building, and upon Spangler's attempt to take possession of it Snuffer filed his bill and obtained an injunction against its removal. Upon the hearing the circuit court perpetuated the injunction and decreed that the machinery was part of the real estate. It will be observed that in none of the deeds is the machinery specifically mentioned, so that the question here for decision is whether this property belongs to the plaintiff J. F. Snuffer as part of the real estate, or to the defendant W. H. Spangler as personal estate. If it is part of the real estate, then it is the property of the plaintiff, he having acquired a one-half interest by the deed from the special commissioners, and the other one-half by his deed from W. H. Spangler and wife. If it is personal estate, it is the property of the defendant W. H. Spangler, he being the owner of a one-half interest in it by the purchase from his father C. Perry Spangler, and the other one-half interest by his purchase from the administratrix at the sale of the personal property of M. A. Spangler, deceased.

The question of when property of this character is to be treated as part of the realty and when as a mere personal chattel is one of some difficulty. Ewell in his work on Fix-

tures, at section 21, after reviewing the authorities, concludes: "but the weight of modern authority and of reason, keeping in mind the exceptions as to constructive annexation admitted by all the authorities to exist, seems to establish the doctrine that the true criterion of an irremovable fixture consists in the united application of several tests: 1st. Real or constructive annexation of the article in question to the reality. 2d. Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected. 3d. The intention of the party making the annexation to make the article a permanent accession to the freehold; this intention being inferred from the nature of the article affixed, the relation and situation of the party making the anexation and the policy of the law in relation thereto, the structure and mode of the annexation and the purpose or use for which the annexation has been made."

*McFadden* v. *Crawford,* 36 W. Va. 671, is cited as controlling in this case. In that case the property involved consisted of two large machines for the purpose of making spikes, which were to be placed upon foundations erected in the plant, and to be operated in connection with the other machinery in the plant. One of the machines had been placed upon its foundation; the other had not been so placed, but was upon the premises, when an attachment was sued out and levied upon both machines. They were held to be part of the real estate upon the theory that while one of them was not actually annexed, still the intention of the owner was clearly to annex it, and upon the further theory that they were such machinery as was clearly adaptable and necessary to the operation of the plant. It would appear from this that the fact that the machines were or were not attached to the real estate was not considered as of great importance, but the controlling factor in that case was the intention of the owner of the property. It being determined from his acts, and from the character of the machinery with which he was dealing, that it was his intention to make it a part of the plant the conclusion was that it became an irremovable fixture.

The case of *Gartland* v. *Hickman,* 56 W. Va. 75, involved the right to remove machinery and appliances which had been

used by a lessee in operating for oil. The fixtures involved in that case were attached to the realty, but from all of the circumstances and the conduct of the business the court came to the conclusion that the other two elements necessary to make them fixtures did not exist, that is, the intention of the owner of the property to make it a part of the realty at the time it was placed thereon, and the adaptability of the machinery to the use of the real estate by the owner thereof, and held that the lessee had the right to remove the fixtures.

In the case of *Taffe* v. *Warnick*, 3 Blackford 111, the Supreme Court of Indiana held that a carding machine situate in the building erected for the purpose of carrying on carding, ready to be put in operation, and standing on the floor in its usual place of operation, but not fastened to the building, is personal property and subject to execution. The court in that case seemed to think that there was a different rule when the question arose between landlord and tenant from that existing when the controversy was between a grantor and a grantee, or a judgment creditor and the owner of the property. We think, however, the rule is the same in all cases, but because of the relation of landlord and tenant there is no presumption of an intention to treat the particular property as irremovable fixtures. In other words, there is no difference in the rule but because of the relation of the parties it is easier of application in the one case than in the other.

In the case of *Binkley* v. *Forkner*, 3 L. R. A. 3 (Ind.) the Supreme Court of Indiana laid down the rule for the determination of this question as follows: "The criterion of an immovable fixture is the united application of three requisites: (1) real or constructive annexation of the article in question to the freehold; (2) appropriation or adaptation to the use or purpose of that part of the realty with which it is connected; (3) the intention of the party making the annexation to make the article a permanent accession to the freehold."

A similar rule was laid down by the Supreme Court of Pennsylvania in the case of *Vail* v. *Weaver*, 132 Pa. St. 363, the court holding that where it appeared that even though the property was attached to the real estate and was adaptable

to the use to which the real estate was being put, still if it is shown that it was the intention when it was so attached that it should remain personalty this should control, and the property be treated as personalty.

In New York it has been held in the case of *McRea* v. *Central National Bank,* 66 N. Y. 489, that: "The criterion of a fixture is the union of these three requisites: First. Actual annexation to the realty or something appurtenant thereto. Second. Application to the use or purpose to which that part of the realty to which it is connected is appropriated. Third. The intention of the party making the annexation to make a permanent accession to the freehold."

In *Edwards & Bradford Lumber Co.* v. *Rank,* 57 Neb. 323, the Court held that the controlling consideration was the intention of the parties.

In *Fifield* v. *Bank,* 148 Ill. 163, the Court laid down the rule for determining when such property was fixtures and when mere chattels as follows: "The rule for determining what are to be regarded as fixtures is as follows: First, real or constructive annexation of the thing in question to the realty; second, appropriation or adaptation to the use or purpose of that part of the realty with which it is connected; and third, the intention of the party making the annexation to make it a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation and the policy of the law in relation thereto, the structure and mode of the annexation, and the purpose or use for which the annexation has been made." See also *Hewitt* v. *Electric Company,* 164 Ill. 420; *Thompson* v. *Smith,* 111 Iowa, 718 (83 N. W. 789) (82 Am. St. Rep. 541); *Railroad Co.* v. *Morgan,* 42 Kansas 23 (16 Am. St. Rep. 471).

From the foregoing authorities we conclude that personal property used in connection with real estate is fixtures and part of the realty, when the following conditions concur: First. It must be attached to the real estate, and by this we do not mean that it has to become so attached as to do serious damage to the realty, or to the property itself in order to remove it, but that it must be so attached as that the two, the

real estate and the fixtures, work together to one end; Second. It must be reasonably necessary and adapted to the purposes for which the real estate is being used; and Third. It must be the intention of the party placing such property upon the real estate to make it a part thereof. If the first two of these elements concur, that is, its attachment to the real estate and its adaptability to the purposes for which the real estate is being used, it will be presumed that the party attaching it intended that it should be a part of the real estate, unless a contrary intention appears from the conduct of the parties in relation to it. In this case we find that the property was reasonably necessary and well adapted to the purpose for which the real estate was at the time being used. We find that it was attached to the real estate in such manner as would make it a part of the real estate, the other essential elements concurring, and from the fact that these two elements concur we would conclude that it was a part of the real estate and passed by the deeds, were it not for the further fact that the conduct of all of the parties in relation to this particular machinery shows a clear intention to treat it as personal property. C. Perry Spangler, when he placed it in the building showed such intent by having it assessed as such, and this intention persisted down to the time of the death of M. A. Spangler. After the death of M. A. Spangler his personal representative showed a like intent by having it appraised as personal estate and sold as such. After Fitzpatrick became the owner of the real estate he showed an intent and purpose to treat this machinery as personal property by agreeing with W. H. Spangler, who claimed to be the owner of it, that he might remove it from the building at any time before the first of July, 1915. From these facts which clearly appear we conclude that the presumption of intention on the part of the owner of this machinery that it should become a part of the real estate is overcome; that this machinery is therefore personal property; that the title to the half interest of M. A. Spangler therein passed to W. H. Spangler at the sale made by his administratrix; that the title to W. H. Spangler's half interest did not pass to T. T. Fitzpatrick by the deed made by W. H. Spangler to Fitzpatrick; and that

no title thereto passed to J. F. Snuffer by the deed from Fitzpatrick to him.

It is contended, however, that the plaintiff in this suit was an innocent purchaser of this property, and should not be charged with this lack of intention on the part of the former owners to treat it as realty. It appears that he has only paid a small part of the consideration and, of course, he could only be an innocent purchaser to the extent that he has paid the consideration. Aside from this he admits that he knew before his purchase from Fitzpatrick that W. H. Spangler claimed to be the owner of this machinery, and knowing of this claim before he made his purchase he cannot be heard to say that he is an innocent purchaser for value.

Finding that the property in controversy belongs to the defendant, we reverse the decree of the circuit court of Raleigh County, dissolve the injunction awarded herein, and dismiss the plaintiff's bill.

*Reversed, injunction dissolved, bill dismisssed.*