In re BODEN MINING CORPORATION, Debtor.

Raymond G. DODSON, Trustee, Plaintiff,

v.

WESSEX MINING CORPORATION, Carbonex of Kentucky, Inc., and Credit Alliance Corporation, Defendants.

Bankruptcy No. 79–20285.
Adv. No. 80–0100.

United States Bankruptcy Court,
S. D. West Virginia.

March 3, 1981.

Raymond G. Dodson, Charleston, W. Va., bankruptcy trustee.

Joseph W. Caldwell, Charleston, W. Va., for Credit Alliance Corp.

William S. Howard, Lexington, Ky., and Michael A. Braun, Charleston, W. Va., for Carbonex of Kentucky, Inc.

## MEMORANDUM OF OPINION

EDWIN F. FLOWERS, Bankruptcy Judge.

Raymond G. Dodson, Trustee of the bankruptcy estate of Boden Mining Corporation, the Debtor, seeks a determination of his rights among competing lien claimants to a coal washing plant. One of those claimants, Carbonex of Kentucky, contends that as the assignee of the seller's security interest the perfection of its liens against the washing plant on August 15, 1978, in Randolph County, West Virginia, and with the West Virginia Secretary of State on October 15, 1979, are sufficient to give it a valid first lien. Another claimant, Credit Alliance Corporation, contends that its lien under an "omnibus clause" in a conditional sale contract, perfected in the interval between the Carbonex county and state filings, gives it priority over both Carbonex and the Trustee. Carbonex answers that Credit Alliance should not be accorded lien status at all regardless of perfection dates since the "omnibus clause" contained in the conditional sale contract did not give Credit Alliance a security interest in the coal washing plant.

In earlier proceedings, the Debtor's chapter 11 case was converted to a liquidation case under chapter 7. Shortly thereafter the Trustee initiated this proceeding. The Trustee regained ownership of the coal washing plant and leasehold rights in land on which it is located by joinder and entry of a default judgment against Wessex Mining Corporation, which was indebted to the Debtor. The parties are not disputing the Trustee's claim to the land. Initially, the Trustee acknowledged the lien of Carbonex and sought to sell the coal washing plant with the lien attaching to the sale proceeds.

When L. B. Smith, Inc., the assignor of Credit Alliance, intervened claiming its lien priority, the Trustee sought approval of a compromise with L. B. Smith which excluded recognition of the secured position of Carbonex. Carbonex objected to the compromise and urged a determination of the rights of the parties prior to any sale. Finally, Credit Alliance Corporation was substituted as successor to the interest of L. B. Smith and the matter came for trial on the respective rights of the Trustee, Carbonex and Credit Alliance in the coal washing plant.

I

In determining the priority of the respective liens, the threshold question is whether the coal washing plant is a fixture. It is agreed that if the plant is a fixture, neither Credit Alliance nor Carbonex perfected a lien by filing in the manner prescribed by the Uniform Commercial Code. W.Va.Code § 46–9–313(1)(b) (1980 Cum.Supp.). As a result, under the avoiding powers of the Bankruptcy Code the Trustee will have a paramount claim to the plant. 11 U.S.C. § 544.

The coal washing plant is an assemblage of screens or sieves, conveyors, and pumps which improve the grade of raw coal to meet market standards for a low sulfur, high BTU product. The plant is factory assembled in units which can be transported to the job site on three highway-type tractor trailers. Suppliers advertise the modular construction of the units and their portability to remote areas near the source of the coal. Plaintiff's Exhibit 3. In this case the plant was erected on land leased by the Debtor under an instrument which gave it the right "to remove all structures, buildings, etc., except railroad siding or sidings." Plaintiff's Exhibit No. 2 at 11, par. (6). The term of the lease is ten years with the option to renew it for two successive ten-year terms. The machinery and equipment constituting the washing plant is largely contained in a two or three-story building. Plaintiff's Exhibit No. 3.

A series of West Virginia cases, beginning with *Snuffer v. Spangler*, 79 W.Va. 628, 92 S.E. 106 (1917), have developed the tests to be used to determine when personal property becomes a fixture.

[P]ersonal property used in connection with real estate is fixtures and part of the realty, when the following conditions concur: First, it must be attached to the real estate, and by this we do not mean that it has to become so attached as to do serious damage to the realty, or to the property itself in order to remove it, but that it must be so attached as that the two, the real estate and the fixtures, work together to one end; Second. It must be reasonably necessary and adapted to the purposes for which the real estate is being used; and Third. It must be the intention of the party placing such property upon the real estate to make it a part thereof. If the first two of these elements concur, that is, its attachment to the real estate and its adaptability to the purposes for which the real estate is being used, it will be presumed that the party attaching it intended that it should be a part of the real estate, unless a contrary intention appears from the conduct of the parties in relation to it. [*Snuffer v. Spangler*, 79 W.Va. 628, 637–38, 92 S.E. 106 (1917)].

Unquestionably, the coal washing plant is attached to the real estate and is reasonably necessary and adapted to the purpose for which the real estate is being used, namely, to process coal for shipment. Inquiry must be made, therefore, to determine whether the parties did not intend that the plant become a fixture. "In determining the intention of the parties as to whether articles attached to the freehold becomes fixtures, consideration should be given to the circumstances and purposes of the annexation." *Pocahontas Coal & Coke Co. v. Bi-Products Pocahontas Co.*, 112 W.Va. 390, 395, 164 S.E. 504 (1932). More recently, the court noted that:

[Our decisions] emphasize the intention of the lessee in attaching property to the real estate of the lessor, that is as to whether it was for the purpose of increas-

ing the value of the land, or whether the attachment was for the sole benefit of the lessee in conducting his trade or business. In each case then it becomes a question of fact whether fixtures placed upon the land of a lessor by a lessee are permanent or removable. [*Milburn By-Products Coal Co. v. Eagle Land Co.*, 141 W.Va. 866, 93 S.E.2d 231, 237 (1956)].

These rules remain unaltered. *Blair v. Freeburn Coal Corp.*, W.Va., 253 S.E.2d 547 (1979).

■ In our case, the lease differentiated between property which could be removed from the land and property which had to remain on the land. Railroad sidings had to remain while structures and buildings could be removed. The modular nature of the coal washing plant, which enhanced its portability both to the present site and for later relocation, supports a conclusion that removal was contemplated. Advertising material of the plant's manufacturer stresses this feature. Plaintiff's Exhibit No. 3. The relatively short, ten-year term of the initial tenancy similarly suggests the temporary character of the installation. The plant was not placed on the land to increase the value of the land, but was for the sole benefit of the lessee in conducting its business. The plant does not lose its identity as personal property. Thus, it is not a fixture as defined by the law of this state. Inasmuch as the plant is not a fixture, the failure of Carbonex and Credit Alliance to observe the fixture filing requirements of the Uniform Commercial Code is irrelevant.

## II

The second issue is whether Credit Alliance acquired and perfected a security interest in the plant through an "omnibus clause" in a conditional sale contract for coal and earth-moving equipment executed between the Debtor and L. B. Smith, the predecessor in interest of Credit Alliance. In addition to reserving a security interest in the equipment being sold to the Debtor, the conditional sale contract contained the following provision:

In any jurisdiction where the Uniform Commercial Code is in effect, the Buyer grants to Holder a security interest in the property and any and all inventory, goods, equipment, machinery, fixtures and assets of any kind and every kind, wherever located now or hereafter belonging to buyer or in which Buyer has any interest . . . .

■ This Court recently examined whether such a general description of assets could create a security interest in then-existing or after-acquired property sufficient to prevail over subsequent lien claimants. *In re Eastern Equipment*, 11 B.R. 732 (S.D. W.Va.1981), held that failure to include a detailed description of the additional collateral in an instrument does not defeat the granting of a security interest. The Uniform Commercial Code makes minimal requirements for identification of collateral. It provides that:

For the purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described. [W.Va.Code § 46–9–110 (1966)].

In this Circuit, the words "inventory," "goods," and "equipment" are adequate to identify collateral claimed by a secured party. *In re Varney Wood Products, Inc.*, 458 F.2d 435 (4th Cir. 1972). "Equipment" is defined by the UCC as goods which "are used or bought for use primarily in business . . . ." W.Va.Code § 46–9–109(2) (1966). "Machinery," though not defined in the Code, clearly is a component of equipment. The coal cleaning plant is comprised of both machinery and equipment. The description contained in the contract is sufficient to identify the plant as collateral claimed by the conditional seller, Credit Alliance. The fact that the same instrument more particularly describes other equipment does not defeat the grant of a security interest under the general description.

## III

The remaining question to be addressed is the priority to be accorded the liens of the

various parties. The chronology of events relevant to this determination are set out below.

August 15, 1978   A. E. Finley (later Carbonex) filed a Financing Statement in Randolph County, West Virginia, describing the coal washing plant and attached equipment. Defendant Carbonex Exhibit No. 1 at 4.

November 6, 1978   L. B. Smith (later Credit Alliance) filed Financing Statements and conditional sale contracts in Randolph County, West Virginia, and with the West Virginia Secretary of State. The Financing Statements referred to the contracts, which described certain heavy equipment and contained the general grant of a security interest in "equipment, machinery . . . and assets of any kind and every kind, wherever located now or hereafter belonging to buyer . . . ." Plaintiff's Exhibit No. 1 at 4 through 18.

October 15, 1979   A. E. Finley (Carbonex) filed a Financing Statement with the West Virginia Secretary of State describing the coal washing plant and attached equipment. Plaintiff's Exhibit No. 1 at 2.

October 26, 1979   The Debtor (Boden) filed a voluntary petition under chapter 11 of the Bankruptcy Code.

March 12, 1980   The chapter 11 case was converted to a liquidation under chapter 7 of the Code and the Trustee was appointed.

The UCC establishes priorities among conflicting security interests in the same collateral.

In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined according to the following rules: (a) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral . . . . [W.Va.Code § 46–9–312(5)(a) (1980 Cum.Supp.)].

The UCC specifies the proper place to file in order to perfect security interests.

(c) In all other cases, in the office of the secretary of state and in addition, if the debtor has a place of business in only one county of this State, also in the office of the county clerk of such county, or, if the debtor has no place of business in this State, but resides in the State, also in the office of the county clerk of the county in which he resides. [*Id.* § 46–9–401(1)(c)].

■ A. E. Finley (Carbonex) initially filed only in Randolph County. It did not file with the Secretary of State until after L. B. Smith (Credit Alliance) had filed both in that county and with the Secretary of State. The filing of A. E. Finley (Carbonex) was not completed until after L. B. Smith (Credit Alliance) had filed. The general rule requires that priority between the competing lien claimants be determined by the order of filing. *See In re Mann,* 318 F.Supp. 32 (W.D.Va.1970). 1A Bender's UCC Service ¶ 7.05[2] at 7A–37. The lien of Credit Alliance, the first to be filed in both places as required by the UCC, thus has priority over the lien of Carbonex.*

■ Although Carbonex perfected its lien prior to Boden's bankruptcy filing, the provisions of 11 U.S.C. § 547 enable the Trustee to avoid the lien of Carbonex as a preference. A trustee can avoid a transfer of property by a debtor to a creditor, on account of an antecedent debt, made while the debtor was insolvent and within 90 days before the filing of the bankruptcy petition, which gives the creditor more than it would receive in a chapter 7 liquidation. *Id.*

---

* W.Va.Code § 46–9–401(2) (1980 Cum.Supp.) provides that a filing made in good faith, but not in all the places required by the Code, is nevertheless effective against any person who had knowledge of the contents of the improperly filed financing statements. There was no evidence that L. B. Smith (Credit Alliance) had knowledge of the prior filing by A. E. Finley in Randolph County; therefore, the exception for good faith filing in less than all the required places is inapplicable.

§ 547(b). The transfer of the security interest is deemed to have been made when it is perfected. *Id.* § 547(e)(1). The Debtor is presumed to have been insolvent in the 90-day period preceding the bankruptcy filing. *Id.* § 547(e)(4). The security interest of Carbonex was perfected on October 15, 1979, eleven days prior to the bankruptcy petition, when it filed financing statements with the Secretary of State. Carbonex did not refute the presumption of insolvency, and the perfection of its security interest would clearly give Carbonex more than it would have received in a chapter 7 liquidation. Perfection of its lien eleven days prior to bankruptcy filing constitutes a voidable preference under the terms of section 547(b) and the Trustee is entitled to priority over Carbonex. *In re Meritt,* 7 B.R. 876, 7 B.C.D. 28 (Bkrtcy., W.D.Mo.1980).

For the foregoing reasons, interests in the coal washing plant are accordingly vested in the Debtor and Credit Alliance. An order consistent with these findings will be entered.