IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-1082

_____

FILED
**November 17, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MARTIN P. SHEEHAN, Trustee
Petitioner

v.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
WEI MORTGAGE CORPORATION, and SENECA TRUSTEES, INC.
Respondents

_____

Certified Question from the United States Bankruptcy Court
For the Northern District of West Virginia

Honorable Patrick M. Flatley, United States Bankruptcy Judge
Case No. 18-bk-712; Adversary No. 18-ap-51

CERTIFIED QUESTION ANSWERED

_____

Submitted: September 22, 2020
Filed: November 17, 2020

Martin P. Sheehan, Esq.
Sheehan & Associates, PLLC
Wheeling, West Virginia

Trustee for the Bankruptcy Estate of
Ronald L. Lancaster and
Jamie L. Lancaster

Christopher A. Dawson, Esq.
Reisenfield & Associates LLC
Cincinnati, Ohio

Counsel for Respondents
Mortgage Electronic Registration
Systems, Inc. and WEI
Mortgage Corporation

JUSTICE WALKER delivered the Opinion of the Court.

CHIEF JUSTICE ARMSTEAD and JUSTICE WORKMAN dissent and reserve the right to file separate opinions.

**SYLLABUS BY THE COURT**

1.	"This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court." Syllabus Point 1, *Bower v. Westinghouse Elec. Corp.*, 206 W. Va. 133, 522 S.E.2d 424 (1999).

2.	Satisfying the requirements of *Snuffer v. Spangler*, 79 W. Va. 628, 92 S.E. 106 (1917), converts the legal character of a manufactured home from personal to real property such that a lien on that property may be perfected by deed of trust even if the homeowner has not cancelled title under the provisions of West Virginia Code § 17A-3-12b(a).

WALKER, Justice:

The Bankruptcy Court for the Northern District of West Virginia certifies a question to this Court about perfecting a security interest on a manufactured home by deed of trust when that manufactured home still maintains a motor vehicle title. Essentially, that court asks how, under West Virginia law, does one perfect a security interest upon a manufactured home that maintains both personal and real property characteristics? We conclude that a manufactured home with a title issued by the Division of Motor Vehicles (DMV) may become affixed, and therefore legally converted to real property, by operation of common law, even if the home's owners have not cancelled the DMV title under the cancellation procedure of West Virginia Code § 17A-3-12b(a). So, because the title cancellation procedure is not the exclusive means of conversion, perfection of a security interest may be made by deed of trust. We therefore answer the certified question in the affirmative.

## I.     FACTS AND PROCEDURAL HISTORY

In the course of managing the Chapter 7 bankruptcy proceedings of Debtors Ronald and Jamie Lancaster, Petitioner and Bankruptcy Trustee Martin P. Sheehan (Bankruptcy Trustee) uncovered an issue with one of Debtors' assets, a "Double wide with land," that, while listed as one asset, appeared to be two separate assets. Respondent WEI Mortgage Corporation (WEI Mortgage) had recorded a deed of trust that would have

1

perfected a security interest in the land and the manufactured home,[1] but the manufactured home also had a DMV certificate of title that did not show WEI Mortgage's lien.

Bankruptcy Trustee filed a complaint to obtain an order from the Bankruptcy Court of the Northern District of West Virginia (Bankruptcy Court) finding that WEI Mortgage did not have a perfected security interest in the Debtors' manufactured home.[2] WEI Mortgage did not necessarily dispute the factual allegations underlying the complaint, but took issue with the relief sought, as it asserted that it had a perfected security interest in the manufactured home because the manufactured home was affixed to real estate and it had perfected its security interest by recorded deed of trust. The Bankruptcy Trustee moved for summary judgment.

In the course of consideration of Bankruptcy Trustee's motion for summary judgment, the Bankruptcy Court concluded that the issue turned on an unanswered point of West Virginia law and agreed, at the request of Bankruptcy Trustee, to certify the following question in relation to this dispute:

---

[1] The terms "double wide," "mobile home," and "manufactured home" are used synonymously. To the extent possible, we use the term "manufactured home." Nothing in this opinion is intended to affect manufactured homes situated on land owned by someone other than the owner of the manufactured home.

[2] Under 11 U.S.C. § 544(a)(3) and 11 U.S.C. § 544(a)(2), at the time of the filing of the bankruptcy petition, the Bankruptcy Trustee is afforded the status of a bona fide purchaser for value concerning real estate assets, and a judicial lien creditor concerning personalty.

Does a creditor have a perfected security interest in a manufactured home that has been affixed to real estate based on the factors of *Snuffer v. Spangler*, 79 W. Va. 628, 92 S.E.[] 106 (1917) when it properly records a deed of trust that describes both the real estate and the manufactured home, even though the manufactured home has an active certificate of title issued by the West Virginia Department of Motor Vehicles pursuant to W. Va. Code § 17A-3-12, which certificate of title 1) has not been cancelled pursuant to W. Va. Code § 17A-3-12b and 2) does not show the creditor's lien on its face, particularly in light of W. Va. Code § 46-9-303(b) to cause the manufactured home to be treated as a fixture?

We address that question first by providing the parties' stipulated facts as a

backdrop:

> This case arises out of the Bankruptcy Trustee's challenge to whether there is a perfected lien applicable to a manufactured home. Originally, Debtors' mortgage loan was obtained from Embrace Home Loans, Inc., on or about June 4, 2015. The loan is secured by a Deed of Trust held by MERS, with WEI [Mortgage] as the nominee/beneficiary, encumbering the real estate commonly known as 2307 St. Johns Road, Colliers, West Virginia 26035, together with all improvements erected on the property and fixtures that are a part of the property. A true and correct copy of that document is attached to the Complaint in this matter as Exhibit B. The legal description attached to the Deed of Trust contains a proper metes and bounds description and also makes reference to a 2003 Fairmont 8028 mobile home with HUD certification 1388320 1388321 and VIN MY0457930ABK. Said Deed of Trust was recorded on June 23, 2015, in Book 542, at Page 626, in the office of the Clerk of the Brooke County Commission. There is no dispute that the recording of the Deed of Trust perfected a security interest in the real estate. The dispute is whether the manufactured home is part of the real estate and so whether the Deed of Trust perfects the lien on that component of property.

> The West Virginia Division of Motor Vehicles issued two titles for the 2004 double wide bearing VINs MY04579320AK and MY04579320BK, respectively. No lien

3

is on record on the titles according to the records of the West Virginia Division of Motor Vehicles. The titles remain active and have not been cancelled pursuant to the procedure set forth in [W. Va.] Code § 17A-3-12B. The DMV-2-TR form, used to implement the aforesaid section of the West Virginia Code, has not been filed with the West Virginia Division of Motor Vehicles nor recorded in the office of the Clerk of the Brooke County Commission.

For purpose of the Certification of Legal Question and the pending Motion for Summary Judgment, MERS and WEI [Mortgage] contend the manufactured home is physically affixed to the real estate for all intents and purposes. The Trustee does not contest that contention at this time.

## II.     STANDARD OF REVIEW

Consistent with our de novo review of questions certified by a circuit court,[3] "[t]his Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court."[4]

## III.     DISCUSSION

We begin by paring down the certified question into the basic inquiry that ultimately resolves the dispute: is the manufactured home personalty or has it been legally

---

[3] *See* Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996) ("The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*.").

[4] Syl. Pt. 1, *Bower v. Westinghouse Elec. Corp.*, 206 W. Va. 133, 522 S.E.2d 424 (1999). *See also*, Syl. Pt. 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998) ("A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court.").

4

converted to real property? Given the parties' stipulations, if the manufactured home is personalty (i.e., still a "vehicle"), WEI Mortgage does not have a secured interest in it because it has not complied with the lien perfection procedures contained in West Virginia Code § 17A-4-3; but, if it is real property, the deed of trust suffices to perfect WEI Mortgage's security interest. That much is beyond dispute of these particular parties. The complicated inquiry is ascertaining the means by which the legal character of a manufactured home may be converted from personalty to real estate. And, more pointedly, whether there is more than one way. The answer to that question alone dictates the perfection requirements under these stipulated facts.

Property, generally speaking, is either real or personal; real property includes both the land and things affixed to that land.[5] Manufactured homes, by virtue of requiring title under our Motor Vehicle Code,[6] are considered personal property until they are affixed to the land. To answer the question we've been tasked with, we analyze whether manufactured homes become affixed to the land—and are thereby converted from personal to real property for legal purposes—when they meet the common law requirements for affixation as espoused by this Court, or when the homeowner complies with the statutory scheme to cancel title under the Motor Vehicle Code.

---

[5] *See* REAL PROPERTY, Black's Law Dictionary (11th ed. 2019). *See also* MIXED PROPERTY, Black's Law Dictionary (11th ed. 2019).

[6] *See* W. Va. Code § 17A-3-12.

So, we analyze two apparently competing schemes which may serve to convert the legal character of a manufactured home from personalty to real estate: the common law scheme and the statutory scheme. The common law scheme is derived from *Snuffer v. Spangler*.[7] In that 1917 case, this Court set forth three factors that determine whether personal property used in connection with real estate becomes part of the realty:

> From the foregoing authorities we conclude that personal property used in connection with real estate is fixtures and part of the realty, when the following conditions concur: First, [i]t must be attached to the real estate, and by this we do not mean that it has to become so attached as to do serious damage to the realty, or to the property itself in order to remove it, but that it must be so attached as that the two, the real estate and the fixtures, work together to one end; second, it must be reasonably necessary and adapted to the purposes for which the real estate is being used; and, third, it must be the intention of the party placing such property upon the real estate to make it a part thereof. If the first two of these elements concur–that is, its attachment to the real estate and it adaptability to the purposes for which the real estate is being used–it will be presumed that the party attaching it intended that it should be a part of the real estate, unless a contrary intention appears from the conduct of the parties in relation to it.[8]

But, *Snuffer* is an old case. Since then, the Uniform Commercial Code (UCC)[9] and the Motor Vehicle Code[10] have been enacted. The Bankruptcy Trustee argues

---

[7] 79 W. Va. 628, 92 S.E. 106 (1917).

[8] *Id.* at --, 92 S.E. at 110.

[9] West Virginia Code §§ 46-1-101, *et seq.*

[10] West Virginia Code §§ 17A-1-1, *et seq.*

6

that the scheme derived from these statutes has abrogated the applicability of *Snuffer* in the context of manufactured homes, and that the procedures of the Motor Vehicle Code are now the exclusive means by which a manufactured home may be converted to real property such that a lien could be perfected by deed of trust.

Specifically, West Virginia Code § 46-9-303 (2000), part of the UCC, relates to "perfection and priority of security interests in goods covered by a certificate of title" and addresses first at subsection (b) how goods are covered by a certificate of title:

> *When goods covered by certificate of title.* Goods become covered by a certificate of title when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority. Goods cease to be covered by a certificate of title at the earlier of the time the certificate of title ceases to be effective under the law of the issuing jurisdiction or the time the goods become covered subsequently by a certificate of title issued by another jurisdiction.

And, at subsection (c), addresses choice of law:

> *Applicable law.* The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in goods covered by a certificate of title from the time the goods become covered by the certificate of title until the goods cease to be covered by the certificate of title.

This choice of law provision simply states that the law of the local jurisdiction that issues the certificate of title for goods governs lien perfection on those

goods.[11]    Bankruptcy Trustee argues that under the UCC, the Motor Vehicle Code provisions are controlling, and exclusive, as far as they dictate a procedure for cancelling manufactured home titles when they become affixed to real estate to allow for conversion of the legal character by operation of statute, and conversely reinstate DMV title when the manufactured home becomes unaffixed.  That code provision, West Virginia Code § 17A-3-12b, states:

> (a) The commissioner may cancel a certificate of title for a mobile or manufactured home affixed to the real property of the owner of the mobile or manufactured home. The person requesting the cancellation shall submit to the commissioner an application for cancellation together with the certificate of title. The application shall be on a form prescribed by the commissioner. The commissioner shall return one copy of the cancellation certificate to the owner and shall send a copy of the cancellation certificate to the clerk of the county commission to be recorded and indexed in the same manner as a deed, with the owner's name being indexed in the grantor index. The commissioner shall charge a fee of $10 per certificate of title canceled. The clerk shall return a copy of the recorded cancellation certificate to the owner, unless there is a lien attached to the mobile or manufactured home, in which case the copy of the recorded cancellation certificate shall be returned to the lienholder. Upon its recording in the county clerk's office, the mobile or manufactured home shall be treated for all purposes as an appurtenance to the real estate to which it is affixed and be transferred only as real estate and the ownership interest in the mobile or manufactured home, together with all liens and encumbrances on the home, shall be transferred to and shall encumber the real property to which the mobile or manufactured home has become affixed.

> (b) The commissioner shall reinstate and reissue any title for a mobile home or manufactured home which was previously

---

[11] The comments to § 46-9-303 confirm that subsection (c) is "the basic choice-of-law rule" relating to the *governing jurisdiction* as opposed to a substantive rule.

8

titled in this state and for which the title was canceled pursuant to this section when the owner of the mobile or manufactured home seeks to sever the home from the real property and applies for a certificate of title in accordance with the provisions of this section. For purposes of this subsection, "owner" means the owner, secured lender of foreclosed or surrendered property, owner of real property who takes possession of an abandoned manufactured home on the property or other person who has the legal right to the manufactured home through legal process.

(1) The owner shall file with the clerk of the county commission where the real property is located an affidavit that includes or provides for all of the following information:

(A) The manufacturer and, if applicable, the model name of the mobile or manufactured home;

(B) The vehicle identification number and serial number of the mobile or manufactured home;

(C) The legal description of the real property on which the mobile or manufactured home is or was placed, stating that the owner of the mobile home or manufactured home also owns the real property;

(D) Certification that there are no security interests in the mobile home or manufactured home that have not been released by the secured party; and

(E) A statement by the owner that the home has been or will be physically severed from the real property.

(2) The owner must submit the following to the commissioner:

(A) A copy of the affidavit filed in accordance with subdivision (1) of this subsection; and

(B) Verification that the manufactured home has been severed from the real property. Confirmation of severance by the assessor where the real property is located is acceptable evidence that the unit has been severed from the real property.

(3) Upon receipt of the information required in subdivision (2) of this subsection, together with a title application and required fee, the commissioner shall issue a new title for the manufactured home.

It is undisputed that the Debtors in this case did not apply to have their certificate of title cancelled under these provisions. So, Bankruptcy Trustee argues that the property was never converted to real property so as to permit WEI Mortgage to perfect its security interest by the deed of trust. And, because the manufactured home remains personal property (a "vehicle" under the Motor Vehicle Code), the deed of trust cannot perfect a security interest in the manufactured home because WEI Mortgage did not comply with West Virginia Code § 17A-4A-3 by causing a lien to be listed on the motor vehicle title.[12]

Bankruptcy Trustee does not dispute that the manufactured home at issue in this case satisfies the requirements of *Snuffer*. And, Bankruptcy Trustee does not appear to dispute that under the common law scheme of conversion, the manufactured home is

---

[12] West Virginia Code § 17A-4A-3(a) provides:

A certificate of title, when issued by the division showing a lien or encumbrance, shall be considered from and after the filing with the division of the application therefor or the notice of lien authorized in section four of this article adequate notice to the state and its agencies, boards and commissions, to the United States government and its agencies, boards and commissions, to creditors and to purchasers that a lien against the vehicle exists.

10

real property and the deed of trust would suffice to perfect WEI Mortgage's lien.[13] Bankruptcy Trustee's argument, rather, is that the common law, as it pertains to manufactured home titles and liens thereon, has been abrogated because the Legislature enacted a procedure to cancel a title to a manufactured home.

In other words, Bankruptcy Trustee argues that the existence of the statutory procedure to cancel a title to a manufactured home and convert it to real property definitively provides the *only* means by which manufactured homes may be converted from personalty to real property. It follows, according to the Bankruptcy Trustee, that the perfection of a lien on a manufactured home may *only* be made through notation on the face of the DMV certificate of title under West Virginia Code § 17A-4A-3 if the titleholder has not cancelled the title under § 17A-3-12b(a).

We do not read that statute so restrictively. Notably absent from § 17A-3-12b is any explicit statement of exclusivity.[14] Likewise, we grasp at straws to read into the statute an *implicit* indication that the Legislature intended this title cancellation procedure

---

[13] *See* W. Va. Code § 38-1-1a (1965).

[14] *Compare* Va. Stat. § 46.2-653.1 (2016): ". . . the provisions of this section constitute the only manner by which a manufactured home owner may convert a manufactured home to real property."

11

to be the exclusive means of converting a manufactured home from personal to real property.

Our statute provides that a manufactured homeowner may *request* a cancellation of title, which the commissioner *may* cancel and, if approved, the property will be treated as real estate for all purposes. It does not provide that the manufactured home is personal property unless and until the application is approved by the commissioner. Compare our cancellation statute with North Carolina's. N.C. Gen. Stat. § 20-109.2(a) (2016) provides,

> If a certificate of title has been issued for a manufactured home, the owner listed on the title has the title, and the manufactured home qualifies as real property as defined in G.S. 105-273(13), the owner listed on the title shall submit an affidavit to the Division that the manufactured home meets this definition and surrender the certificate of title to the Division.

Even that statute's *shall* submit and surrender scheme has not been held to be exclusive: "[t]he lack of surrender of the MH Title and the lack of filing of an affidavit is not conclusive evidence that the provisions of N.C. Gen. Stat. § 105-273(13) have not been met. That determination must be made by a review of the evidence and an analysis of the case law."[15]

---

[15] *In re Tillman*, 565 B.R. 586, 598 (Bankr. E.D.N.C. 2016).

Our title cancellation statute has been examined in two cases, and neither found the cancellation procedure to be the exclusive means of converting a manufactured home from personal to real property. In *Sanders v. Brown*, this Court examined a conveyance of real estate where it was disputed whether the manufactured home had been conveyed with the land given the failure to cancel title pursuant to West Virginia Code § 17A-3-12b.[16] We reasoned that there was "no error in the circuit court's refusal to find that West Virginia Code § 17A-3-12b (2004) is dispositive[,]" applied *Snuffer*, and affirmed the circuit court's order that the manufactured home was affixed to the land.[17] Granted, in that case, the facts involved a familial dispute rather than perfection of a lien by a creditor. But, we nonetheless find it instructive here because, given the stipulations of the parties, the certified question is dependent only upon the legal character of the manufactured home as real or personal property, not the commercial character of the encumbrance.

In 2017, the Bankruptcy Court of the Southern District of West Virginia looked at this issue in a similar context to the case before us, and also applied *Snuffer* in evaluating the legal character of a manufactured home.[18] In that case, the bankruptcy debtors (Weikles) were arguing against the validity of a deed of trust. The bankruptcy

---

[16] No. 18-0017, 2018 WL 6119215, at *4 (W. Va. Nov. 21, 2018).

[17] *Id.* at *5.

[18] *In re Weikle*, No. 1:17-BK-10001, 2017 WL 4127994, at *2-3 (Bankr. S.D.W. Va. Sept. 13, 2017).

13

court in *Weikle* applied the common law rule after considering the lack of statutory authority.[19] Specifically, the bankruptcy court discussed that "[t]he Weikles appear to assert that, inasmuch as they did not cancel their manufactured home vehicle title in accordance with a West Virginia statute, the home necessarily could not be a fixture."[20] In rejecting that argument, the bankruptcy court concluded that West Virginia Code § 17A-3-12b(a) "speaks only to the condition precedent to canceling a certificate of title on a manufactured home and the consequences resulting[,]" and that if the Legislature intended the categorical and far-reaching result advocated by the Weikles, "it would have unquestionably used more sweeping language."[21]

> The *Weikle* court also found the corresponding tax provisions telling:
>
> a corresponding measure, West Virginia Code section 11-5-12, provides that a "mobile home" permanently attached to the owner's real estate may not be classified as personal property if the owner has complied with section 17A-3-12b(a). The immediately preceding observation by the Court concerning the Legislature's approach applies to this measure as well. Additionally, section 17A-3-12b(a) offers no guidance concerning whether a manufactured home becomes a fixture to the land for all purposes. This appears so inasmuch as the statute, like its many counterparts in Chapter 11 of the West Virginia Code, are concerned only with the proper levy and collection of tax revenue.[22]

---

[19] *Id.*

[20] *Id.* at *3 n.3.

[21] *Id.*

[22] *Id.*

And, it ultimately concluded in light of these statutes, that "[t]hese provisions, whether apart or in combination do not purport to prescribe the only means by which a manufactured home becomes part of an owner's real property."[23] It certainly would have been a simpler analysis to state that if the DMV title had been cancelled, the manufactured home is considered real property; and if it had not been cancelled, it was still personal property.

A review of the legislative materials leading to the enactment and amendments to West Virginia Code § 17A-3-12b do not persuade us to find exclusivity either. Rather, the legislative history indicates the Legislature's intent to clarify that, if the cancellation procedures were met, manufactured homes may *not* be treated as personal property for legal purposes, presumably taxation and DMV fees.[24] That is a marked distinction from a legislative intent that manufactured homes may *only* be affixed and

---

[23] *Id.*

[24] *See* W. Va. Code § 11-5-12 (2014) ("A mobile home permanently attached to the real estate of the owner may not be classified as personal property if the owner has filed a canceled certificate of title . . . ."). *See also*, W. Va. S.B. 574, 2014 81st Leg., Reg. Sess. (W. Va. 2014); W. Va. S.B. 320, 2004 West Virginia Legislative Wrap-Up, 5/4/2004 ("The purpose of the legislation is to provide a procedure to permit owners of mobile or manufactured homes that are affixed to the real property of the home owner to obtain cancellation of certificates of title. . . . In addition, the measure provides that those mobile homes permanently attached to real estate of the owner may not be classified as 'personal' property but instead, real property.").

legally considered real property if the homeowner complies with the cancellation procedures.

And, while taxation of property is its own beast, we do find the tax provision § 11-5-12 helpful as far as it references and sheds light on § 17A-3-12b. That code provision states, "[a] mobile home permanently attached to the real estate of the owner may not be classified as personal property if the owner has filed a canceled certificate of title with the clerk of the county commission and the clerk has recorded it in the same manner as deeds are recorded and indexed." The Legislature, in enacting § 11-5-12 to the tax code with reference to the cancellation procedures, clearly provided that if a manufactured home is attached to the real estate of the owner and that homeowner complies with the cancellation statute, the manufactured home *may not* be assessed as personal property. Implicit in that rule is that if a homeowner does not comply with the title cancellation procedures, the manufactured home may still be taxed as either real or personal property at the discretion of the assessor – and, as a practical matter, it is often taxed as real property.[25] The taxation of manufactured homes as real property underscores the lack of

---

[25] *See, e.g.*, *Mobile Homes*, FAYETTE COUNTY, WEST VIRGINIA ASSESSOR, https://fayettecounty.wv.gov/assessor/personalproperty/Pages/Mobile-Homes.aspx ("Mobile homes are assessed as either real estate or personal property depending on the situation . . . . If your mobile home is located on land that you own it is considered real estate and the taxes will be included on your real estate tax bill."); *Mobile Homes as Real Property*, BERKELEY COUNTY ASSESSOR'S OFFICE, http://www.theassessor.org/mobilehomes.html ("If you own a mobile home and also own the land on which it sits, your mobile home will be assessed as real property."); *Personal Property*, KANAWHA COUNTY ASSESSOR, https://kanawhacountyassessor.com/personal-

exclusivity in this statute. If the Legislature had intended an exclusive conversion scheme, § 11-5-12, in corresponding with § 17A-3-12b(a) would provide that manufactured homes are taxed as personal property and *only* as personal property unless and until the homeowner complied with the cancellation procedure because until that point, it could not be considered real property for legal purposes.

We conclude that given the statute's language that compliance with the cancellation procedure alters the legal character for all purposes, the Legislature contemplated that it would be one mechanism by which a manufactured home may be converted from personal to real property. Bankruptcy Trustee appears to advocate that the procedure is exclusive purely because it exists. But, for the reasons set forth above, we decline to adopt that view given the language employed, and conversely, not employed, by the Legislature in drafting this statute, and disagree that the statute provides the exclusive means to accomplish conversion of a manufactured home to real property.

However, Bankruptcy Trustee raises important policy concerns: the efficiency and transparency of a single titling system which, undoubtedly, would serve to benefit lenders and bona fide purchasers alike, not to mention the correlative lowering of costs associated with lending, and the ever-alluring benefit of circumventing litigation. Those concerns do not fall on deaf ears; we simply find that if this statutory scheme were

property, (Mobile home can be assessed as Personal Property or Real Property. . . . If you do own the land the mobile home is sitting on it can be assessed as Real Property.").

17

enacted, as Bankruptcy Trustee suggests, to accomplish an *exclusive* means of conversion for manufactured homes, it fails in that purpose. And, we believe the exclusivity of the cancellation statute should be made plain before we may apply it as such. Had the Legislature intended such a strict application, it would have said so.

As it stands, the cancellation statute provides manufactured homeowners with the means to have their manufactured home declared real property, to the exclusion of personal property, by operation of statute. From a practical perspective, we believe that process is the preferable, but not exclusive means to convert a manufactured home property to real property. The statutory scheme provides notice to creditors that the property may not be considered personal property and provides a single means to perfect a lien, and for those reasons dissuades litigation. A manufactured home may also be converted to real property by operation of common law, but reaching that result may require costly litigation, which is a risk associated with the failure to apply for cancellation of title under § 17A-3-12b(a). So, a lender who does not require compliance with the statutory cancellation procedure or neglects to complete a DMV title search before encumbering a manufactured home does so at its own risk. In other words, the lender who encumbers a manufactured home as though it is real property in the eyes of the law risks that its priority may be usurped if, through litigation, the manufactured home is deemed unaffixed under the common law or there is a prior lien on the motor vehicle title.

18

Under the stipulation of these parties as presented to this Court, the perfection of a security lien in the manufactured home at issue rests on its legal classification as real or personal property. We therefore hold that satisfying the requirements of *Snuffer v. Spangler*, 79 W. Va. 628, 92 S.E. 106 (1917), converts the legal character of a manufactured home from personal to real property such that a lien on that property may be perfected by deed of trust even if the homeowner has not cancelled title under the provisions of West Virginia Code § 17A-3-12b(a). Accordingly, we answer the certified question in the affirmative.

## IV.  CONCLUSION

For the foregoing reasons, we answer the question certified by the Bankruptcy Court for the Northern District of West Virginia in the affirmative.

Certified Question Answered.