In re Walter C. WILKINSON and
Elizabeth Wilkinson, Debtors.

BARCLAYS AMERICAN/MORTGAGE
CORPORATION, Plaintiff,

v.

Walter C. WILKINSON,
et al., Defendants.

Bankruptcy No. 94–1–3079–DK.
Adv. No. 94–1A–794–DK.

United States Bankruptcy Court,
D. Maryland.

July 12, 1995.

Charles H. Fleischer, Bethesda, MD, for Barclays American/Mortgage Corp. and Norwest Mortgage, Inc., plaintiff.

Joseph R. Whaley, Rockville, MD, for Patricia Murphy Vorus, defendant.

Lawrence F. Regan, Jr., Rockville, MD, for Walter C. Wilkinson and Elizabeth Wilkinson, defendants.

Thomas Lerner, Bethesda, MD, for Robin Meadows Homeowner's Association, defendant.

## MEMORANDUM OPINION

DUNCAN W. KEIR, Bankruptcy Judge.

The court has before it Cross Motions for Summary Judgment filed by the Plaintiff, Norwest Mortgage, Inc. (formerly Barclays American Mortgage Corporation) and the Debtors. The parties request this court to summarily decide whether the undisputed facts as set forth below provide a basis upon which this court can grant reformation of an instrument, thus placing Norwest Mortgage, Inc. in a first priority lien position on debtors' residence. After a review of the facts as set forth by the parties, it appears that there is no genuine issue of material fact, thus summary judgment is appropriate. FRBP 7056(c); *Miller v. Federal Deposit Ins. Corp.*, 906 F.2d 972, 973 (4th Cir.1990).

## UNDISPUTED FACTS

In 1990, the debtors decided to purchase a new house. Because of Mrs. Wilkinson's poor credit history, the husband was named as the only purchaser. Mr. Wilkinson executed a Sales Agreement dated December 16, 1990, to buy the subject property as the sole buyer. The Sales Agreement also contained a Financing Rider that obligated the buyer to procure and place a loan with a recognized lending institution, secured by a conventional first mortgage or deed of trust on the property. The Sales Agreement designated Anchor Title Co. to conduct settlement.

Thereafter, Mr. Wilkinson made application to Diversified Mortgage Corporation for a purchase money first mortgage. Although he showed his marital status as "Married" on the typed loan application, he named only himself as the prospective borrower. In an earlier, hand-written draft of the loan application, Mrs. Wilkinson indicated that title to the Property was to be taken in the names of Walter and Elizabeth Wilkinson. Diversified's subsequent loan approval letter, however, expressly stated that title would be taken only in Mr. Wilkinson's name.

Anchor issued a title insurance commitment for the property to Diversified. Anchor's commitment showed Mr. Wilkinson as the proposed owner. In order to issue a final title insurance policy, Anchor required a deed in proper form to Mr. Wilkinson and a deed of trust in proper form from Mr. Wilkinson to Diversified. Mrs. Wilkinson was not mentioned in the commitment.

Settlement was held on July 25, 1991, in accordance with the written instructions issued by Diversified to Anchor. Walter and Elizabeth Wilkinson and a notary who was then employed by Anchor were present at the settlement.

At settlement numerous documents were signed or delivered; every document identified Mr. Wilkinson as the sole buyer/borrower. Mr. Wilkinson signed an Affidavit of Occupancy in which he swore that he would be occupying the Property as his principal residence. He signed a Compliance Agreement by which he agreed to cooperate with the lender in adjusting any clerical errors that might be discovered after settlement. He delivered Diversified's loan proceeds check which was payable to him alone. He

presented a policy and premium receipt for homeowner's insurance which identified him alone as the named insured. He signed the Settlement Statement, an $118,600 Note to Diversified and the purchase money Deed of Trust. The Deed of Trust contained the usual warranty of title.

The Deed, however, named Walter and Elizabeth Wilkinson, husband and wife, as grantees. The first deed prepared by Anchor named only Mr. Wilkinson. Mrs. Wilkinson, however, wanted her name on the deed. After some confusion, at settlement, a second deed was prepared adding Mrs. Wilkinson as a grantee, which deed was signed, delivered and recorded. The Deed of Trust was also duly recorded in Frederick County on August 5, 1991.

In August 1992, HFC recorded a $5,500 deed of trust against the Property. In December 1992, Patricia Vorus recorded a judgment lien against the Property for $4,994.49. In April 1993, Robin Meadows Homeowners Association recorded a statement of lien for $852.89, which was re-recorded in June 1993.

The Wilkinsons filed a joint Chapter 13 Petition on August 17, 1994 and listed Barclays as a secured creditor in the amount of $116,000. Their Chapter 13 Real Property Schedule contains the same representation. In addition, their Chapter 13 Plan includes Barclays as one of the secured creditors to whom distributions would be made.

Barclays American commenced this action by filing a Complaint seeking, reformation of instrument, imposition of equitable lien and quiet title. Barclays named the debtors and all junior lienors as defendants. In their answer, debtors denied allegations of the facts as set forth by Barclays and raised the affirmative defense of the availability of 11 U.S.C. § 544. In addition, the debtors filed a counterclaim for determination of validity, priority and extent of lien and objection to claim.

In this adversary proceeding, a default judgment has been entered against HFC. The other parties have actively participated.

## ANALYSIS AND CONCLUSIONS

Norwest Mortgage, Inc. raises two arguments to support its entitlement to a first priority deed of trust against the subject property. Norwest urges that reformation of the deed is appropriate, or, in the alternative, that Norwest holds an equitable lien against the property. The debtors argue that a debtor's strong arm powers pursuant to 11 U.S.C. § 544 defeat Norwest's claim and that reformation should not be granted to the prejudice of other creditors.

■ Property interests are created and defined by state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Maryland law governs the issue of what interest, if any, in real property located in Maryland was transferred by the execution, delivery and recording of the deed of trust.

■ Addressing first the Plaintiff's assertion of an equitable lien, the court finds that such relief cannot be afforded to the Plaintiff under the facts of this case. Not every ineffective or defective grant of an interest in real property creates an equitable mortgage in favor of the grantee. "[G]enerally, where an instrument intended to operate as a mortgage fails as a legal mortgage because of some defect or infirmity in its execution, an equitable mortgage may be recognized, with priority over judgments subsequently obtained." *Lubin v. Klein,* 232 Md. 369, 371, 193 A.2d 46, 48 (1963) (citing *See also Jackson v. County Trust Co.,* 176 Md. 505, 6 A.2d 380 (1939); *Western Nat. Bank of Baltimore v. National Union Bank,* 91 Md. 613, 46 A. 960 (1900); *cf. Berman v. Berman,* 193 Md. 614, 69 A.2d 271 (1949)); *Smith v. Lawler,* 93 Md.App. 540, 549, 613 A.2d 459, 464 (1992), *cert. denied,* 329 Md. 110, 617 A.2d 1055 (1993). The theory of the creation of an equitable mortgage is that even though there was a defective execution, a court of equity should enforce an obligation despite technical defects in the instrument. However, the doctrine is not available where the person or persons who executed the mortgage did not have the legal power to do so. *Lubin v. Klein,* 232 Md. at 371, 193 A.2d at 48.

In the instant case, only Mr. Wilkinson was a grantor under the deed of trust. As the property had been granted to Mr. and Mrs. Wilkinson, husband and wife, Mr. and Mrs. Wilkinson held title to the property as tenants by the entireties. One co-tenant of a tenancy by the entireties cannot voluntarily alienate any interest in the property, *Arbesman v. Winer*, 298 Md. 282, 290, 468 A.2d 633, 637 (1983), and therefore, individually holds no legal power to convey by deed of trust a title interest in the property to secure the mortgage debt. *Id.* Thus, there is more than a technical defect in the execution of the mortgage and the doctrine of equitable mortgage is not available to bestow upon the Plaintiff the secured interests which it seeks in this action.

Plaintiff also asserts that the deed granting the title to Mr. and Mrs. Wilkinson should be reformed, in effect eliminating Mrs. Wilkinson as a co-owner of the property. There is no factual basis upon which this court may reform the deed to eliminate Mrs. Wilkinson as a co-grantee. From the stipulated facts, it is apparent that Mrs. Wilkinson's intent, at the time of settlement, was to be included as a grantee in this transaction. Therefore, it cannot be said that as between the parties to the deed, there was a mutual mistake of fact, *i.e.*, that all parties intended that Mrs. Wilkinson not be a grantee. Without such a mutual mistake of fact, reformation is not an available remedy. It should also be noted in this regard, that the Plaintiff is not a party to the transaction which Plaintiff seeks to have reformed.

Nonetheless, it does appear that the deed of trust should be reformed to effectuate the parties' intent under applicable Maryland law.

A party seeking reformation of an instrument must show clearly and beyond a reasonable doubt the original intent of the parties and the existence of a mistake in the written agreement. *Kishter v. Seven Courts Community Association, Inc.*, 96 Md.App. 636, 640, 626 A.2d 993, 996 (1993) (citing *Moyer v. Title Guarantee Company*, 227 Md. 499, 177 A.2d 714 (1962)). The plaintiff must show that "there has been a mutual mistake—that is, where there has been a meeting of the minds—and an agreement actually entered into, but the instrument, in its written form, does not express what was intended by the parties thereto." *Id.* Thus, upon an adequate showing, the court may reform an instrument, except as against bona fide purchasers for value without notice. *Hoffman v. Chapman*, 182 Md. 208, 211, 34 A.2d 438, 440 (1943) (citing *Stoneham Five Cents Savings Bank v. Johnson*, 295 Mass. 390, 3 N.E.2d 730, 106 A.L.R. 1333; *Archer v. McClure*, 166 N.C. 140, 81 S.E. 1081, Ann. Cas.1916C, 180).

The debtors oppose reformation, claiming that the mistake was unilateral. This court disagrees. The debtors and Norwest are parties to the deed of trust. Debtors, by counsel, at the hearing on cross motions, expressly stipulated to the fact that the debtors knew that the loan would be secured by the property. Without doubt, Barclays (now Norwest) also intended such result. As to that element of the transaction, Norwest has proved beyond a reasonable doubt that the parties intended the same result, thereby having a "meeting of the minds." Indeed, debtors' treatment of Barclay's claim in their Chapter 13 petition further evidences their belief that the loan was secured. The debtors listed Barclays as a secured creditor and treated the claim as secured in the Chapter 13 plan.

The instrument, *i.e.*, the deed of trust, did not express what was intended by the parties. The deed of trust named only Mr. Wilkinson as trustor and signatory. For an effective grant of security, both grantors as tenants by entireties had to sign the deed of trust. Such signature by Elizabeth Wilkinson would not be inconsistent with the evidence before this court. Elizabeth Wilkinson had a poor credit history, thus she did not apply for financing. The addition of her name to the deed of trust would not make her personally liable on the Note, but would cause the deed of trust to convey the intended grant of the property as security. Therefore, this court will order that the deed of trust be reformed to add Elizabeth Wilkinson as a grantor.

The debtors also argue that 11 U.S.C. § 544(a) prevents reformation, alleging that the debtors are bona fide purchasers for value under 11 U.S.C. § 544, thus precluding reformation of the deed of trust.[1] As to the debtor-in-possession, section 544 technically does not make the trustee/debtor-in-possession a bona fide purchaser for value, but rather extends to the trustee the power to avoid a transfer that is voidable by a bona fide purchaser. No where in the law of Maryland has this court found authority which prohibits reformation because of that federal grant of such power to the debtor-in-possession. Furthermore, for the reasons set forth herein below, such a result would create an inequitable windfall, which it is clear that the Bankruptcy Code is intended to prevent. If reformation was blocked by the existence of section 544, the second trust holder and subsequent lienors would in effect ascend into a higher secured position against the property and receive a windfall thereby. This result would be contrary to the purpose of 11 U.S.C. § 551, which preserves avoided transfers for the benefit of the bankruptcy estate, not the subsequent lienors.

Having found that Norwest is entitled to reformation of the deed of trust, this court must next consider whether the debtors may assert the rights of a bona fide purchaser pursuant to 11 U.S.C. § 544(a)(3), thus allowing the debtors to avoid Norwest's lien.

11 U.S.C. § 544(a)(3) provides as follows:

The *trustee* shall have, as of commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

(emphasis added).

11 U.S.C. § 1303 provides as follows:

Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(*l*) of this title.

Section 544, which contains the "strong arm" avoidance power, is not included in the list set forth in section 1303. Therefore, a plain reading of section 1303 indicates that a Chapter 13 debtor does not have the authority to exercise the "strong arm" powers. In further support of this interpretation, 11 U.S.C. § 522(h) authorizes a debtor to avoid a transfer avoidable under § 544, only to the extent that the debtor could have exempted such property under § 522(g). 11 U.S.C. § 522(h).

Notwithstanding, in limited situations, courts have allowed Chapter 13 debtors to exercise avoidance rights. *In re Ridgley,* 81 B.R. 65 (Bankr.D.Or.1987) (Court did not decide Chapter 13 debtors power to exercise strong-arm powers, debtor can exercise avoidance rights pursuant to § 522(h)); *In re Chapman,* 51 B.R. 663 (Bankr.D.D.C.1985) (Debtor can exercise avoidance rights but only for benefit of creditors, not debtor). Debtors have not demonstrated their entitlement to standing, even under the broader reading of the statute, therefore this court will not allow these debtors to avoid the reformed deed of trust, while in Chapter 13.[2] The court need not, and, therefore, does not decide whether the limited right of a Chapter 13 debtor to invoke § 544 exists in an appropriate case.

Debtor has filed a Motion to Convert this case to Chapter 11 but requested that the court continue the hearing upon said motion without ruling. If this case was converted to a case under Chapter 11, the debtors, as debtors-in-possession, would have all

---

1. The effect of § 544 is discussed *infra.*

2. Indeed, at a hearing held on debtor's motion to convert, debtor's counsel outlined a potential Chapter 13 plan which proposed a minimal distribution to general unsecured creditors.

the rights and powers of a trustee, 11 U.S.C. § 1107, including the strong arm powers granted by 11 U.S.C. § 544(a). For this reason the court will consider the effect of § 544 if applied to the facts of this case.

A bona fide purchaser at the commencement of the case would be entitled to avoid the newly reformed deed of trust. Pursuant to Maryland law, every recorded deed or other instrument takes effect from its effective date as against the grantee of any deed executed and delivered subsequent to the effective date, unless a subsequent purchaser takes in good faith, without constructive notice, for value and records the deed first. Md.Code Ann.Real Prop. § 3–203 (1988).

Pursuant to 11 U.S.C. § 544(a)(3), the trustee/debtor-in-possession has the right and powers of, and may avoid any transfer of property by the debtor, that is voidable by a bona fide purchaser of real property who hypothetically obtained that status at the time of the commencement of the case. It is clear under Maryland law, that such hypothetical bona fide purchaser would prevail over a party taking under a reformed instrument, where such reformation was subsequent to the bona fide purchaser's acquisition of an interest, unless the bona fide purchaser did not take in good faith or had constructive notice of the prior transaction. *Hoffman v. Chapman*, 182 Md. 208, 211, 34 A.2d 438, 440 (1943). Accordingly, a trustee could avoid the reformed deed of trust for the benefit of the estate, in this case.

Furthermore, the restrictions placed upon the debtor-in-possession's ability to invoke section 544 by the Court of Appeals for the Fourth Circuit in *In re Hartman Paving, Inc.*, 745 F.2d 307 (4th Cir.1984) would not prevent the avoidance of the reformed deed of trust under the facts of this case. In *In re Hartman Paving, Inc.*, the Court of Appeals applied West Virginia law to its analysis of a debtor-in-possession's ability to invoke 11 U.S.C. § 544(a)(3). Under West Virginia law, an improperly acknowledged deed of trust is valid between the parties or those

with actual notice but void against subsequent bona fide purchasers for value without actual notice. *In re Hartman Paving, Inc.*, 745 F.2d 307, 309 (4th Cir.1984) (citing *Tavenner v. Barrett*, 21 W.Va. 656 (1883); *Central Trust Co. v. Cook*, 111 W.Va. 637, 163 S.E. 60 (1932)).

Notwithstanding the plain language of § 544(a), the Court held that the debtor "was a party to the transaction and consequently had actual notice of the conveyance. Thus although [the debtor] is entitled to claim the powers of a subsequent purchaser for value under § 544(a), those powers, as properly defined under local law, do not permit him to void the deed because—simply stated—[the debtor] is not the type of subsequent purchaser that *Tavenner* was designed to protect." *Id.* at 310.

The *Hartman Paving* decision has been widely criticized and narrowly construed.[3] The Court of Appeals reached its decision on facts and law with limited applicability. *See In re Greenbelt Co–Op., Inc.*, 124 B.R. 465, 471 (Bankr.D.Md.1991) (citation omitted) (Reliance on *Hartman* misplaced because *Hartman* involved avoidance powers of bona fide purchaser under § 544(a)(3) and intricacies of West Virginia real property conveyance law). Additionally, it appears that the effect of 11 U.S.C. § 551 was not considered or dealt with in the *Hartman Paving* decision.

11 U.S.C. § 551 provides as follows:

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

The automatic effect of § 551 would preserve the avoided lien for the estate, thus benefitting the creditors of the estate, including an unsecured claim of the avoided transferee. In effect the application of § 551 prevents creditors who hold subordinate liens from receiving a windfall as a result of the

---

**3.** *In re Probasco,* 839 F.2d 1352, 1354 (9th Cir. 1988); *In re Sandy Ridge Oil Co.,* 807 F.2d 1332, 1336 (7th Cir.1986); *McEvoy v. Ron Watkins, Inc.,* 105 B.R. 362, 364 (N.D.Tex.1987); *In re*

*Matos,* 50 B.R. 742, 744 (N.D.Ala.1985), *appeal dismissed as moot,* 790 F.2d 864 (11th Cir.1986); *In re Whitlow,* 116 B.R. 158, 161 (Bankr. W.D.Mo.1990).

avoidance. Any junior lienholder occupies its original position, as if the first lienholder's interest was not avoided. *In re Colandrea,* 17 B.R. 568, 582 (Bankr.D.Md.1982) ("§ 551 *automatically* preserves the lien for the benefit of the estate, and prevents junior lienors from improving the position at the expense of the estate"); *In re Van de Kamp's Dutch Bakeries,* 908 F.2d 517, 520 (9th Cir.1990) ("language and legislative history of section 551 indicate that transfers avoided under section 548 are automatically preserved for the benefit of the bankrupt's estate, regardless of whether the interest could have been avoided by a competing creditor in a pre-petition state court proceeding"). In effect, that value would be distributed to unsecured creditors.[4]

■ Section 349(b)(1)(B) also would prevent the debtor from receiving a windfall in the event the case is unsuccessful. *In re Greenbelt Co–Op., Inc.,* 124 B.R. 465, 471 (Bankr.D.Md.1991).

11 U.S.C. § 349(b)(1)(B) provides as follows:

Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

reinstates—

any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title.

After avoidance and preservation of the reformed deed of trust, the rights of the parties to the subject property would be as follows: a first trust lien in favor of the estate against the property for the amount of the Norwest claim, the second trust lien of HFC, the judgment lien of Patricia Vorus, and thereafter the Robin Meadows Homeowner's Association statement of lien. As a consequence, the claim of Norwest would become an unsecured claim against the estate, but would be entitled with all such claims to the benefit of the asset of the estate under any Chapter 11 plan (which must comply with the requirements of § 1129(a)(7)), or any subsequent distribution if this case is converted to a case under another chapter. If this case is dismissed, as provided in 11 U.S.C. § 349(b)(1)(B), the avoidance of the trust lien of Norwest would automatically be reinstated to Norwest.

In summary, the court finds that the deed of trust by and between Mr. Wilkinson and Barclay's (Norwest) should be reformed to include Mrs. Wilkinson as a co-grantor, thus conveying title for purposes of security to Norwest. This reformation is allowed by Maryland law as against all of the subsequent lienors because none of those subsequent lienors has demonstrated that they occupied the position of a bona fide purchaser for value without notice. Two of the subsequent lienors obtained liens by judgment or notice of lien and not by conveyance and hence are not bona fide purchasers. The second trust holder, HFC, as a consequence of its failure to answer the complaint, has suffered a judgment by default. HFC did not come forward and prove that it received its interest for value and without notice. In their present position as Chapter 13 debtors, the court finds debtors lack standing to avoid the reformed lien under 11 U.S.C. § 544, but this decision on avoidance is without prejudice to any party with standing to avoid such transaction.

---

**4.** Of course, this avoidance and preservation would more likely than not increase the amount of value which dissenting unsecured claimants (if any) would be entitled to under 11 U.S.C. § 1129(a)(7). Similarly, if this court had permitted the Chapter 13 debtors to invoke 11 U.S.C. § 544, it is likely that debtors would have to significantly increase payments to unsecured creditors in their Chapter 13 plan, in order to comply with 11 U.S.C. § 1325(a)(4). *See In re Chapman,* 51 B.R. 663 (Bankr.D.D.C.1985); *See generally* 1 Keith M. Lundin, *Chapter 13 Bankruptcy* §§ 3.43, 5.29 (2d ed. 1994).