**In re David Lee REESE, Jennifer Lee Reese, Debtors.**

**In re Joseph E. THOMAS, Elizabeth A. Hill, Debtors.**

Bankruptcy Nos. 95–1–4409–DK, 95–1–1286–PM.

United States Bankruptcy Court, D. Maryland.

April 2, 1996.

Thomas L. Lackey, Chapter 13 Trustee Bowie, MD.

### *MEMORANDUM OPINION*

PAUL MANNES, Chief Judge, and DUNCAN W. KEIR, Bankruptcy Judge.

Objections to secured claims filed by the respective debtors in each of these cases against Chevy Chase Bank (the "Bank") raise identical issues of law and present many facts in common. Accordingly, this joint Memorandum Opinion shall be filed in each case.

### *Facts and Conclusions of Law*

The Bank claims a secured interest in goods "sold" by two home improvement contractors to the respective debtors. In the case of *In re David Lee Reese and Jennifer Reese* (the "*Reese* Case") the contract was for the purchase and installation of a new roof on the dwelling of those debtors. In the case of *In re Joseph E. Thomas and Elizabeth A. Hill* (the "*Thomas/Hill* Case"), the contract was for the purchase and installation of vinyl framed windows that were installed in the dwelling of those debtors, in replacement of older windows presumably discarded. Each installment contract was purchased from the contractor by the "Bank", which is the holder of the right to collect the installments due.

The contracts state as follows in both cases,

**Security:** I am giving a security interest in the goods or Property being purchased.

\* \* \* \* \* \*

**Security Interest:** I grant you a security interest under Title 9 of the Maryland Commercial Law Code in the property purchased pursuant to this contract, including a security interest in any accessions, attachments, and substitutions, and in any proceeds from the sale of such property. Such security interest shall not terminate until amounts due under this contract have been paid in full. I hereby waive and assign to you any marital, homestead or other exemption rights I may have with respect to the property. I also grant you a security interest in and assign

Bobby Y. Lee, Rockville, MD, for Debtors David Lee Reese, Jennifer Lee Reese, Joseph E. Thomas, and Elizabeth A. Hill.

James Edward Hirschman, Calverton, MD, for Chevy Chase, F.S.B.

to you the insurance proceeds and unearned insurance premiums of any insurance required in connection with this transaction. You have all the rights and remedies of a creditor or secured party under Title 12, Subtitle 10 and Title 9 of the Maryland Commercial Law Code, and other applicable law. I agree to pay any expense, tax, or charge paid to a governmental agency in connection with this transaction. You waive and release any and all liens or claims or rights of lien on my principal dwelling which may arise by operation of law.

*See* Objection of Chevy Chase, F.S.B., to Confirmation of Chapter 13 Plan; and to Classification of its Claim as an Unsecured Personal Loan, Exhibit A (Filed Oct. 4, 1995) ("Bank's Objection in the *Reese* Case"); Objection of Chevy Chase, F.S.B., to Confirmation of Chapter 13 Plan; and Objection of Chevy Chase, F.S.B. to Classification of its Claim as an Unsecured Personal Loan of Elizabeth A. Hill, Exhibit A (Filed May 25, 1995) ("Bank's Objection in the *Thomas/Hill* Case").

### I. Rights of a holder of an unperfected security interest.

In both cases, neither the Bank nor its predecessors in interest recorded a financing statement in any place of record. No other documents purporting to convey an interest to the seller and/or the Bank in the goods sold was executed or recorded.

The Bank asserts that it is a secured creditor as against the respective Chapter 13 debtors as a result of the respective goods "sold" in each case. The Bank contends that it holds an unperfected security interest in the respective debtors' residences, or in the alternative, a security interest in the respective goods sold pursuant to § 9–313 of the Uniform Commercial Code, codified in the Md.Code Ann., Com.Law I (1992) (hereinafter referred to as the "U.C.C."). Bank's Objection in the *Thomas/Hill* Case, at 7; Memorandum in Support of Plaintiff's Reply to Defendant's Motion to Dismiss Complaint ("Bank's Memorandum in the *Thomas/Hill* Case"), at 4–5, 7–8; Supplemental Memorandum in Support of Chevy Chase, F.S.B.'s Objection to Confirmation of Chapter 13 Plan ("Bank's Supplemental Memorandum in the *Thomas/Hill* Case") at 1; Bank's Objection in the *Reese* Case, at 2, 5.

Although unperfected, as between buyer and seller (and seller's assigns), a security interest forms an enforceable lien giving the holder of the lien the right to recover against the collateral upon which the unperfected security attached under the U.C.C. U.C.C. §§ 9–201 and 9–301; *In re Ragan,* 140 B.R. 283 (Bankr.Kan.1992); *In re Freeman,* 72 B.R. 850, 853 (Bankr.E.D.Va.1987); *In re Chase,* 37 B.R. 345, 347 (Bankr.Vt. 1983); *In re Evingham,* 27 B.R. 128, 129 (Bankr.W.D.N.Y.1983). The significance of perfecting a security interest is that it fixes the priority of the secured creditor as to the collateral in relation to subsequent parties who may later obtain a security interest in the same property. *In re Chase,* 37 B.R. 345, 347 (Bankr.Vt.1983). However, in this instance the Bank is not asserting that its security interest is superior to that of the debtors' other secured lenders. Rather, the Bank is merely asserting that it is secured to the extent that there is any value in the goods or real estate. The determination of the Bank's claims status (secured vs. unsecured) is material to the obligation which must be contained in a confirmable plan.

### II. Debtors' right to assert lien avoidance powers under 11 U.S.C. § 544.

The Bank, while acknowledging that an unperfected security interest may be avoided by the trustee pursuant to 11 U.S.C. § 544(a), challenges the debtors' contentions that they have standing to assert the same lien avoidance powers as a trustee, except to the extent that the lien sought to be avoided impairs an allowable exemption pursuant to 11 U.S.C. § 522(g). Section 544(a) provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is avoidable by—

\*　　\*　　\*　　\*　　\*　　\*

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a). That is, if under state law, a hypothetical judgment lien creditor obtaining a judgment lien on the date of the petition in bankruptcy would prevail in priority over the unperfected security interest, the trustee's avoidance power under the above quoted bankruptcy code section could eliminate the lien of the unperfected security interest holder. This issue is resolved under state law by § 9–301 of the U.C.C., which provides in part:

(1) Except as otherwise provided in subsection (2) an unperfected security interest is subordinate to the rights of

 \* \* \* \* \* \*

(b) A person who becomes a lien creditor before the security interest is perfected

 \* \* \* \* \* \*

(3) A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of the assignment, and a trustee in bankruptcy from the date of the filing of a petition or a receiver in equity from the time of appointment.

However, the Chapter 13 trustee has not sought to avoid the liens in either of the instant cases, under his § 544 powers. Also, no exemptions are claimed by any of the debtors' for the respective goods which are allegedly subject to the liens claimed by the Bank in the instant cases.

This court has previously opined that a Chapter 13 debtor may not exercise the avoidance powers of 11 U.S.C. § 544. *In re Wilkinson,* 186 B.R. 186, 191 (Bankr.Md. 1995); *see also In re Colandrea,* 17 B.R. 568, 583 (Bankr.Md.1982) (Chapter 13 debtor does not have same powers as trustee); *In re*

*Cox,* 10 B.R. 268 (Bankr.Md.1981).[1] In *Wilkinson* this court noted that "a plain reading of section 1303 indicates that a Chapter 13 debtor does not have the authority to exercise the 'strong arm' [avoidance] powers" under 11 U.S.C. § 544. *Wilkinson,* 186 B.R. at 191. Considering an attempt by debtors to exercise the provisions of 11 U.S.C. § 544 to avoid the reformation of a deed, this court read 11 U.S.C. § 1303 strictly and concluded that the authority of a Chapter 13 debtor to exercise the powers of a trustee is limited to the list of powers expressly enumerated in that section of the Code. *Id.* Because 11 U.S.C. § 1303 does not refer to 11 U.S.C. § 544, this court concluded a Chapter 13 debtor does not have the authority to invoke the powers provided for in that section. *Id.*

However, as this court noted in *Wilkinson,* in some "limited situations, courts have allowed Chapter 13 debtors to exercise avoidance rights." *Id.* Consequently, this court, in that case, expressly reserved ruling on the issue of "whether the limited right of a Chapter 13 debtor to invoke § 544 exists in an appropriate case." *Id.* at 191; *see also In re Freeman,* 72 B.R. 850 (Bankr.E.D.Va.1987) ("where Chapter 13 trustee took no action, debtors had standing to employ avoidance powers under § 544(a)(3) in order to defeat creditor's unperfected security interest in their property"); *In re Hall,* 26 B.R. 10 (Bankr.M.D.Fla.1982); *In re Moriarty,* 22 B.R. 689 (Bankr.Neb.1982). Under this court's holding in *Wilkinson,* the security interest of the Bank, although unperfected and avoidable by the trustee, could not be avoided by the respective debtors in these cases.

### III. *The collateral securing the Bank's unperfected security interest.*

■ The question that must be addressed in each of these cases is whether the Bank, in fact, held an unperfected security interest in the goods or the debtors' respective dwellings, on the date of the petition. In order to answer that question, the court must determine the class or character of the goods

1. Expositions of the issue may be found in 1 Keith M. Lundin, *Chapter 13 Bankruptcy,* § 3.43 (2d ed. 1994); 1 David G. Epstein et al., *Bank-* *ruptcy,* § 6–2 (1992); William L. Norton, Jr., 5 *Norton Bankruptcy Law and Procedure 2d,* § 119.6 (1994).

which were attached to the respective dwellings prior to the petition date and as intended under the terms of the respective installment contracts.

Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty. *Vaughen v. Haldeman*, 33 Pa. 522, 75 Am.Dec. 622; *Jarechi v. Philharmonic Society*, 79 Pa. 403, 21 Am.Rep. 78. Second, those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty—to them the ancient maxim 'Quicquid planatatur solo, solo cedit,' applies in full force. *Bank v. North*, 160 Pa. 303, 28 A. 694 (steam heating pipes); *Morrow Mfg. Co. v. Race Creek Coal Co.*, 222 Ky. 807, 2 S.W.(2d) 662 (coal tipple); *Meagher v. Hayes*, 152 Mass. 228, 25 N.E. 105, 23 Am.St.Rep. 819 (house); *Powers v. Dennison*, 30 Vt. 752 (house). See *Harmony Bldg. Ass'n v. Berger*, 99 Pa. 320; *Boeringa v. Perry*, 96 Wash. 57, 164 P. 773. Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of the annexation; in this class fall such chattels as boilers and machinery affixed for the use of an owner or tenant but readily removable. *White's Appeal*, 10 Pa.

252; *Shell v. Haywood & Snyder*, 16 Pa. 523; *Harlan v. Harlan*, 20 Pa. 303; *Hill v. Sewald*, 53 Pa. 271, 91 Am.Dec. 209; *Wick v. Bredin*, 189 Pa. 83, 42 A. 17; *Wickes Bros. v. Island Park Ass'n*, 229 Pa. 400, 78 A. 934; *Bullock Electric Mfg. Co. v. Traction Co.*, 231 Pa. 129, 80 A. 568; *Ridgway D. & E. Co. v. Werder*, 287 Pa. 358, 135 A. 216; *American Laundry Mach. Co. v. Miners' Trust Co.*, 307 Pa. 395, 161 A. 306.

*Clayton v. Lienhard*, 312 Pa. 433, 436, 167 A. 321, 322 (1933).

### a. Categories of Goods recognized by the U.C.C.

The U.C.C. recognizes three categories of goods:

(1) those which retain their chattel character entirely and are not part of the real estate; (2) ordinary building materials which have become an integral part of the real estate and can not retain their chattel character for purposes of finance; and (3) an intermediate class which has become real estate for certain purposes, but as to which chattel financing may be preserved.

U.C.C. § 9–313 (1992) (Official Comment 3). The term "fixture"[2] is commonly used to define both the second and third category of goods mentioned above, which have been sold as personalty but have been affixed to real property to the extent that they have lost their character as chattel and become associated with the realty. *See Schofer v. Hoffman*, 182 Md. 270, 34 A.2d 350 (1943). Some commentators have suggested that fixtures are actually only the third category of goods that occupy the gray area in between "pure chattel" and "pure realty", and which may retain their character as personality while being bound to a particular piece of real

---

**2.** "Fixture" is defined to include any goods which become so related to particular real estate that an interest in them arises under real estate law and therefore, goods integrally incorporated into the real estate are clearly fixtures.

U.C.C. § 9–313 (Official Comment).

White and Summers, quoting from the American Law of Property, defines a fixture as "a former chattel which, while retaining its separate physical identity, *is so connected with the realty that a disinterested observer would consider it a part thereof.*" 4 James J. White & Robert S.

Summers, *Uniform Commercial Code* § 33–8, at 340 (4th ed. 1995) (quoting 5 *American Law of Property* § 19.1, at 3–4 (1952)) (emphasis in original).

The term "fixture" discussed herein is not intended to apply to trade fixtures, which are a separate class of goods brought into or upon real property by a tenant in order to carry on the business to which the real estate has been devoted. Trade fixtures retain their character as personal property. For a discussion of what distinguishes trade fixtures from ordinary fixtures *see* 35 Am.Jur.2d, *Fixtures*, § 3 (1965).

estate. 4 White & Summers, *Uniform Commercial Code*, § 33–8, at 338 (4th ed. 1995); 35 Am.Jur.2d, *Fixtures*, § 1, n. 1 (1967).

▆▆ Other commentators have created the same distinction by recognizing two classes of fixtures. *See* Coogan, P.F., *Fixtures–Uniformity In Words or In Fact?*, 113 U.Pa.L.Rev. 1186, 1188 (1965). The first class consists of those goods that are incorporated into a structure to the extent that they can not be removed and have completely lost their independent character as chattel. *Id.* This first class of fixtures may not be the subject of a security interest. *See* U.C.C. § 9–313(1).[3] The second class consists of goods that have been attached to realty, but which may be removed from the realty and upon which a security interest may be obtained as to the goods independent of the realty. *Id.*

▆▆ Whether goods become fixtures or remain chattel is a mixed question of law and fact. *E.g., Allentown Plaza Assoc. v. Suburban Propane Gas Corp.*, 43 Md.App. 337, 405 A.2d 326 (1979). The line which separates whether fixtures retain their chattel character for the purposes of financing or whether they become fully incorporated into the realty to the extent that a security interest in them may not be maintained, would also appear to be a factual issue.

### b. *Creation of liens.*

#### 1. *Security interests in pure chattel goods.*

As to the first category of goods, which completely retain their chattel character, a security interest may be created by granting language similar to that in the respective contracts held by the Bank. If the court finds that the goods in the instant cases remained pure chattel then the Bank would

have an unperfected security interest in the goods only and not in the realty.

#### 2. *Security interests in fixtures that have become pure realty.*

▆▆ As to the second category of goods, which constitute the first class of "fixtures", a security interest can not have been held in these type of goods on the date of the bankruptcy petition under the U.C.C. *See* U.C.C. § 9–313(1). If the court finds that the goods sold to the debtors became permanently incorporated into the realty, the Bank would have to be able to establish under state law that the installment contracts were effective to convey an interest in land in order to maintain its lien. Md.Code Ann., Real Prop. § 3–101 (1996). In Maryland, with limited exceptions, an interest in real property may only be conveyed by a document which meets the requirements of a deed and is recorded in the appropriate land records. Md.Code Ann., Real Prop. § 3–101 (1996); *Kingsley v. Makay*, 253 Md. 24, 251 A.2d 585 (1969) (title to land does not pass until deed is properly executed and recorded).

▆▆ The documents in question in the instant cases did not purport to convey an interest in real estate, were not acknowledged and were not recorded as required by Md.Code Ann., Real Prop. § 4–101(a) (1996). Thus, if the court finds the goods in these cases were integrally incorporated into the respective dwellings on the dates of the petitions then, absent an applicable exception to Md.Code Ann., Real Prop. § 3–101 (1996),[4] the Bank's failure to properly secure its interest in the debtors' real estate renders its claims completely unsecured.

#### 3. *Security interests in fixtures that have not become pure realty.*

▆▆ The third category of goods constitutes the second class of fixtures, occupying

---

**3.** Section 9–313(1) of the U.C.C. provides:

The rules of this section do not apply to goods incorporated into a structure in the manner of lumber, bricks, tile, cement, glass, metal work and the like and no security interest in them exists under this title unless the structure remains personal property under applicable law.

**4.** Maryland has by statute created a mechanism for a contractor to obtain a lien for work done upon a structure, in which the contractor's pre-

decessors in interest may have a superior interest. Md.Code Ann., Real Prop. § 9–102 (1996). However, there is no evidence before the court that such a lien ever was acquired nor that such an interest was conveyed to the Bank. *See* Md. Code Ann., Real Prop. § 9–104(a)(2) (1996) (lien may not be acquired unless notice is given to owner within 90 days of completion of work); Md.Code Ann., Real Prop. § 9–106(b) (1996) (court order required to establish lien).

the gray area between real and personal property, and may act as security where a security interest in the goods has been granted. Under the U.C.C. an unperfected security interest in the goods as "fixtures", would be recognized under the granting language of the contracts held by the Bank. This interest could have been perfected by the recordation of a "fixture filing" in the land records of the county in which the land lies. U.C.C. § 9–401.

 If a fixture filing is made before the goods become affixed to the realty then the seller retains a perfected security interest in the goods as chattel, that has priority over the security interests of all persons with a security interest in the real estate, except under certain circumstance elaborated upon in § 9–313(4) of the U.C.C. U.C.C. § 9–313(2). On the other hand, if the seller does not make a fixture filing until after the goods become affixed to the property then the security interest would not be valid against persons with existing security interests in the real estate. In relation to subsequent secured persons the seller's security interest would be valid to the same extent as a "fixture filing" made prior to the time when the goods became affixed. U.C.C. § 9–313(3).

 A person with a security interest in a "fixture" has the right, upon the debtor's default, to remove the collateral from the real estate provided that his interest in the goods removed is superior to those of all persons having an interest in the real estate. U.C.C. § 9–313(5). However, if the secured party elects to remove the "fixture" he must reimburse any other party with an interest in the real estate, with the exception of the debtor and parties that have consented to the removal, for the costs of repairing any damage caused by the removal.[5] Id. The right to removal is the sole remedy available to a party with a security interest in a fixture under § 9–313 of the U.C.C. See Capitol Fed. Sav. & Loan Ass'n v. Hoger, 19 Kan. App.2d 1052, 880 P.2d 281 (1994); Maplewood Bank and Trust v. Sears, Roebuck &

Co., 265 N.J.Super. 25, 625 A.2d 537 (1993); Dry Dock Savings Bank v. DeGeorgio, 61 Misc.2d 224, 305 N.Y.S.2d 73 (1969). The fact that fixtures may be custom made and may have no value once removed is immaterial. See Nu–Way Distributing Corp. v. Schoikert, 44 A.D.2d 840, 355 N.Y.S.2d 475 (N.Y.App.Div.1974).

The U.C.C. does not address what remedial actions a person with a security interest in a fixture may undertake where his security interest is subordinate to that of persons with an interest in the real estate. However, White and Summers suggests that,

> [t]he negative implication of [U.C.C. § 9–313(5) ] is that the creditor with security in a fixture does *not* have a right to remove when the creditor is subordinate to one or more property interests. Thus a subordinate fixture lender will usually have to wait for the mortgagee to foreclose and then take the scraps off the table after the mortgagee is fully satisfied.

4 White & Summers, Uniform Commercial Code, § 33–11, at 349 (4th ed. 1995) (emphasis in original).

Thus at least one commentator has suggested that the holder of a security interest in removable fixtures that is inferior in priority to other lienors, has a lien upon the structure to which the goods were affixed, but may not execute upon that lien. In both of the instant cases the Bank is not asserting that its interest in either of the respective debtors' real estate or the respective goods sold is superior to that of the debtors' other secured lenders. Rather, the Bank is merely asserting that it is secured to the extent that there is value in any of the property, be it real or personal. If the court were to determine in a case that the goods sold fell within this category, then a Bank's claim could be secured to the extent that there is any value in the respective pieces of real estate. However, under the contracts at issue in these cases, the contracted for improvements were accomplished upon the principal dwellings of the respective debtors. The contractor ex-

---

**5.** White and Summers speculates that, "[i]f the cost of removing the fixture and repairing the physical injury that results from its removal is greater than its value on the used market, a secured creditor who must pay these costs under the Code will forego the repossession right." 4 White & Summers, Uniform Commercial Code, § 33–11, at 348 (4th ed. 1995).

pressly waived all liens upon the debtors' principal dwellings (last sentence of quoted paragraph entitled: Security Interest, *infra* ).[6]

### c. Classifying the goods in the instant case.

 To determine whether an article is a fixture there are three factors that courts in Maryland have considered:

(1) Annexation to the realty, either actual or constructive;

(2) adaptation of the article or structure to the use of that part of the realty with which it is connected.

(3) the intention of the party making the annexation to make the article a permanent accession to the freehold. This intention being inferred from the nature of the article annexed, the situation of the party making the annexation, the mode of annexation, and the purpose for which it was annexed.

*Schofer v. Hoffman,* 182 Md. 270, 34 A.2d 350, 351 (1943). The most important of these factors is the third, the intent of the parties, and it is well settled law that parties may by their express agreement retain the character of personal property as such and prevent it from becoming a fixture, even though without the agreement the personal property would lose its chattel character and become either a fixture or a part of the realty. *E.g., Born v. Hammond,* 218 Md. 184, 146 A.2d 44 (1958). In construing the intent of the parties courts have looked to the first two elements noted above, and where they concur a presumption has been recognized, unless contradicted by the conduct of the parties. *In re Boden Mining Corp.,* 11 B.R. 562, 564 (Bankr.S.D.W.Va.1981); *Snuffer v. Spangler,* 79 W.Va. 628, 632, 92 S.E. 106, 110 (1917). A party asserting that affixed goods were to remain personalty and not become fixtures bears the burden of proof. *See First Trust & Savings Bank of Moville v. Guthridge,* 445 N.W.2d 401, 9 U.C.C.Rep.Serv.2d 1380 (Iowa Ct.App.1989).

 In the instant cases the Bank has assumed that burden by asserting that it was the parties' intent that the respective goods would remain personalty. As evidence of that intent the Bank offers a provision in the contracts (the "Provision") entered into by the debtors in each case, which provides:

> I understand and agree that all of the Property described above is to be and remain personal Property even though it may be attached to real estate as described below, and you may take possession of the Property if I default.

However, the intent evidenced by the contract provision, is at odds with the manner in which the goods have been annexed to and adapted to the use of the realty.

Language in a contract that provides that goods and services which are to be sold under the contract will remain "personal property" is not conclusive, but only some evidence of the parties' intent. *In re Kriger,* 169 B.R. 336, 340 (Bankr.W.D.Pa.1994). In *Kriger* the goods being sold and installed were carpeting and padding, which the court concluded the parties had intended to become incorporated into the realty despite a contract provision to the contrary. In considering the intent of the parties' the court stated:

> There is no bright-line test for determining the intent of the parties with respect to their actions. The finder of fact must, at a minimum, consider and weigh factors such as: (1) the nature of the personalty involved; (2) the status of the possessor of the personalty in respect to the realty; (3) the manner of annexation of the personalty; and (4) the use to which the personalty is put when making its determination.

*Id.* (citations omitted). Applying these indicia of intent to the instant case the court can not find that the parties intended to retain the character of the installed windows and roof respectively as personalty. First, the nature of the goods and services involved do not lend themselves to being considered per-

---

**6.** In addition an attempt by the Bank to use this form of contract to obtain a lien upon residential property to secure payment under home improvement contracts would violate Md.Code Ann., Bus.Reg. § 8–501(c) for which violation civil penalties could be imposed. Md.Code Ann., Bus.Reg. § 8–620 (1992).

sonalty. It is inconceivable that the parties could have contemplated, let alone intended, that a roof or windows once installed would ever revert to their chattel character or would be removed from the realty at some latter time. *Id.; see also San Diego Trust & Savings Bank v. San Diego County,* 16 Cal.2d 142, 105 P.2d 94, 98 (1940) (doors and windows are a part of the realty), *cert. denied,* 312 U.S. 679, 61 S.Ct. 449, 85 L.Ed. 1118 (1941); *Slane v. Curtis,* 41 Wyo. 402, 286 P. 372, 376 (1930) (same). The goods were purchased with the intent that they would be incorporated into the realty, as evidenced by the fact that the contract provided for the installation of the goods into the realty [7] and the only use for the goods was as part of the respective dwellings. *In re Kriger,* 169 B.R. at 340. Second, the status of the debtors as the owners, as opposed to lessees, of the real estate suggests that they intended the installation to be permanent and did not intend to remove the goods. *Id.; Warrington v. Hignutt,* 42 Del. 274, 31 A.2d 480, 482 (Super.Ct.1943) (the relationship of the annexor to the land is a factor; the closer the relationship the greater the inference of an intent to make the annexation permanent). Third, because of the degree to which the respective goods were integrated into the real estate it is inconceivable that the goods could be removed without creating great damage to the respective dwellings and without creating far more expense to the Bank in removing the goods and repairing the real estate then the Bank could possibly hope to recover from the salvage value of the recovered goods. Where goods affixed to realty can only be removed by doing serious damage to either the goods or the realty, an inference that the goods were intended to be permanently incorporated into the realty may be inferred as a matter of law. *Bay State York Co. v. Marvix Inc.,* 331 Mass. 407, 119 N.E.2d 727, 729 (1954) ("Where the chattel is so affixed to the realty that its identity is lost, or where it can not be removed without material injury to the realty or to itself, the intent to make it a part of the realty may be established as [sic] matter of

law. . . ."); *Warrington,* 31 A.2d at 482 (same); *San Diego Trust & Savings Bank,* 105 P.2d at 97 ("When an article must be destroyed in order to accomplish its removal this has been held to be a factor indicating the permanency of its affixation"). Fourth, the lack of any use for the goods, were they to be removed from the respective realty to which they are attached and the fact that the old roof and windows were likely discarded mitigates against a finding that the goods once installed were intended to remain personalty and might be removed. *San Diego Trust & Savings Bank,* 105 P.2d at 97.

Based on the factors discussed in *Kriger* as applied to the instant cases the court is persuaded that the parties in the instant cases did not intend that the respective goods remain personalty. Rather, it was the expectation of both the debtors and the Bank's predecessors in interests that the goods would be permanently incorporated into the realty. The court further finds that the contract Provision is not useful in determining the debtors' intent because it is doubtful that the debtors even read, let alone understood, the Provision. A contract of adhesion or boilerplate language in a contract is not helpful in determining the intent of the party who did not draft the contract. *See In re Mako, Inc.,* 127 B.R. 474, 477 (Bankr.E.D.Okla.1991). This rule is applicable to the installment sales contracts at issue in the instant cases, where the Provision is buried among numerous other terms and conditions of which the debtors could hardly be expected to understand the legal significance.

■ Alternately, even were the court to find that the Provision expressed the intent of the debtors, that intent may not determine the character of goods, where the goods "are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; . . . [then they have become a part of the] realty, even in the face of an expressed intention that they should be considered personalty . . ." *Clayton v. Lienhard,* 312 Pa. 433, 167 A. 321, 322 (1933). In *Clayton,* the court distinguished

---

**7.** The contract in the *Hill/Thomas* Case states that the contractor will: "Furnish & install 14 premium vinyl replacement windows in white

with 1/2 screens and heavy duty locks". The contract in the *Reese* Case states that the contractor will: "Install roof."

the effect of the parties' intent depending upon the goods at issue. As to goods, such as boilers and machinery, which although affixed to real property could be removed without destroying the chattel itself and used elsewhere, the parties' intent was controlling. However, as to goods that have no value or useable character separate from the real estate after they are removed and which are an integral part of the real estate, the parties' intent, as evidenced by a contractual provision, that the goods should remain personalty contradicts the actual nature of the goods and can not be given effect in characterizing the nature of the goods. *Id.* 167 A. at 323.

This does not mean that under *Clayton* the contract provision would be void. Where examination of all of the facts supported it, the provision may support a finding that the parties intended to allow the contractor a right of removal.

> This, conclusion, however, does not deprive the plaintiff of his right under the contract to remove the ... [attached goods] should defendant fail to pay for it. The true construction of this [contractual] provision, for the retention of title with the right to remove in case of default, is that, although the title does pass because of the manner in which the chattel was affixed, the plaintiff has a contractual right to remove the apparatus and thus reconvert it into personalty.

*Id.* (citations omitted).

 In the instant cases, the court can not find that the Bank has the right to remove the roof or the windows. Indeed, the Bank does not claim such a right and has not offered the consent of parties holding superior liens upon the collateral which would be materially damaged by such removal. The only evidence of such an intent is the boilerplate language in the Provision of the contracts. All other evidence, including the language in the contract that the goods were to be installed, suggests a contrary intent, that being that the goods would be affixed in a permanent manner.

The court finds that upon their installation the respective goods in question passed from being "pure personalty" to "pure realty." The goods were not removable fixtures, they were incorporated into the respective dwellings in the nature of ordinary building materials and, as such, completely lost their chattel character. Even were the court to find that the goods were "fixtures" retaining their chattel character or that the debtors contractually intended to permit the Bank's predecessors in interest to remove the goods upon the debtors' default, the court could not permit the Bank to remove the goods now as such removal would commit waste upon the collateral of senior lienors and property of the estate. *See* Shanker, M.J., *An Integrated Financing System for Purchase Money Collateral: A Proposed Solution to the Fixture Problem Under Section 9–313 of the Uniform Commercial Code,* 73 Yale L.J. 788, 806–07 (1964); 35 Am.Jur.2d, *Fixtures,* § 16 (1965) (The effect of a special agreement may be negated where the article annexed to the freehold loses entirely the character of personal property, or where it is so firmly affixed as to become thoroughly and substantially a part of the realty in which case its character as personalty will not be preserved even by a special agreement intended to accomplish that result).

For these reasons the court will enter orders in these cases sustaining debtors' objections to the classification of the Bank's claims as secured and allowing the Bank's claims as unsecured.