In re Mervin B. and Goldie
J. GILMORE, Debtors.

Ocwen Financial Services,
Inc., Plaintiff,

v.

Mervin B. Gilmore, Goldie J. Gilmore,

and

Charles E. Terek, Trustee

and

Beneficial Mortgage Co. of
Virginia, Defendants.

Bankruptcy No. 01–31413.
Adversary No. 01–3110.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

April 29, 2002.

Bruce A. Clark, Hopewell, VA, for Debtors.

Ben R. Lacy, Richmond, VA, for Ocwen Financial Services, Inc.

### AMENDED MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

This Memorandum Opinion amends the previous opinion entered on the court's docket on April 3, 2002, for the purpose of noting the interest of defendants Charles E. Terek, Trustee, and Beneficial Mortgage Co. of Virginia, which parties defaulted in answer to the complaint.

Trial was held on February 4, 2002 on plaintiff's complaint to determine the validity, priority, or extent of a lien on defendants' property. The court took the matter under advisement and now finds that the omission of Goldie J. Gilmore's signature from the deed of trust was due to a mutual mistake of fact. The deed of trust

should be reformed to reflect the parties' original intent to bind Ocwen and Mervin and Goldie Gilmore under the deed of trust. Ocwen's interest will thereby be secured and will take priority over the trustee's interest in the debtors' home.

### FACTS

In December 1998, Mervin B. Gilmore and Goldie J. Gilmore, who are husband and wife, signed a contract to purchase real property located at 4901 Old Logging Circle, Prince George, Virginia. The Gilmores intended to finance their purchase by a loan from Ocwen Financial Services, Inc. Although their purchase agreement indicated that the parties would take title jointly, only Mr. Gilmore applied for the loan because Mrs. Gilmore had a poor credit history. Ocwen approved Mr. Gilmore's loan application in January 1999.

Settlement of the purchase took place on January 29, 1999, at which time Mr. Gilmore signed a number of closing documents that were presented to him by the settlement agent. Among the documents signed by Mr. Gilmore were a purchase money promissory note in the principal amount of $121,500.00 payable to Ocwen and the purchase money deed of trust. The deed of trust contained a prominent notation on the first page that he Mr. Gilmore is "Joined by His Spouse Goldie J. Gilmore." [1] However, on the signature page of the deed of trust, only Mr. Gilmore's name was typed under a signature line. Mr. Gilmore executed the deed of trust over his typed name, but Mrs. Gilmore did not execute the document. Mrs. Gilmore did, however, sign the settlement statement under the "Borrower" signature line along with Mr. Gilmore. The settlement statement acknowledges that the proceeds of the loan were applied to the purchase price of the property.

At settlement fee simple title to the property was conveyed to the Gilmores as tenants by the entirety with right of survivorship by a deed from I.J. Benesek, Jr., Inc., a Virginia corporation. The deed and deed of trust were duly recorded on February 3, 1999, in the Clerk's Office of the Circuit Court of Prince George, Virginia, in Deed Book 466, page 411 (deed) and page 414 (deed of trust).

In April 1999, the Gilmores took out a second deed of trust loan from Beneficial Mortgage Co. of Virginia. Beneficial is a beneficiary of a duly recorded second deed of trust dated April 14, 1999. Charles E. Terek, trustee under this deed of trust and Beneficial were named as defendants in Ocwen's complaint. However, neither of these parties filed an answer to the complaint, and the clerk has entered default against them. Neither of these parties appeared at trial.

In June 1999, Mr. Gilmore defaulted on the Ocwen promissory note. After Mr. Gilmore failed to cure the default, Ocwen initiated foreclosure proceedings.

As it prepared to foreclose on the property, Ocwen discovered for the first time that Mrs. Gilmore had not signed the deed of trust. Ocwen directed the original settlement agency to have Mrs. Gilmore correct the omission, but she declined to do so. Shortly after the foreclosure proceedings began, the Gilmores filed this chapter 13 petition.

The court's findings of fact incorporate the purchase agreement, the deed of trust and the deed, presented to the court as plaintiff's exhibits A, D and F.

### POSITION OF THE PARTIES

Ocwen Financial asserts that its claim is fully secured and that the omission of Mrs.

---

1. Plaintiff's Exhibit D, Deed of Trust, p. 1.

Gilmore's signature was based on a mutual mistake of fact. Ocwen argues that the parties intended for Ocwen to have a fully secured interest in the property and that the purchase money deed of trust should be reformed to reflect their intent at the time the agreement was made. In the alternative, Ocwen argues that the error was a unilateral mistake that was induced by debtors' fraudulent conduct and that the deed of trust should be reformed.

Debtors contend that the loan by Ocwen was unsecured because the deed of trust was not properly executed. Debtors base their contention on the fact that the property was conveyed in tenancy by the entirety, which prohibits a spouse from conveying property held in tenancy by the entirety if not joined by the other spouse. Because the debt to Ocwen was unsecured, Ocwen's debt may not be favored over the debts of other unsecured creditors. Such preferential treatment would violate 11 U.S.C. § 1322.[2] The debtors also claim that Ocwen would be permitted to receive more than it would if this case were filed under chapter 7, which would violate 11 U.S.C. § 1325(a)(4).[3]

**2.** (a) The plan shall—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however,

## CONCLUSIONS OF LAW

 Reformation is an equitable remedy that is appropriate where parties to a written contract have reached a meeting of the minds as to certain terms, but the agreement does not reflect their original intent as to those terms. *See Lawyers Title Ins. Co. v. Golf Links Dev. Corp.,* 87 F.Supp.2d 505, 512 (W.D.N.C.1999). Reformation is warranted where the disconnect between the parties' original intent and the resulting agreement is based on mutual mistake or where the mistake of one party was induced by the fraudulent conduct of the other. *See United Va. Bank v. Robert L. Cleveland, Jr. (In re Cleveland),* 53 B.R. 814, 817 (Bankr. E.D.Va.1985). The effect of reformation is to implement the terms of the agreement that were originally intended and reform the contract to reflect the parties' original agreement.

 The burden of proof in a reformation case is on the moving party to "put forward evidence of such a clear, convincing and satisfactory character so as to leave no reasonable doubt in the mind of the court." *Id.; see also Barclays*

such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims....

**3.** (a) Except as provided in subsection (b), the court shall confirm a plan if—

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title [11 USCS §§ 701 et seq.] on such date....

*Am./Mortgage Corp. v. Wilkinson (In re Wilkinson),* 186 B.R. 186, 190 (Bankr. D.Md.1995) (holding that the movant must prove mistake "clearly and beyond a reasonable doubt").

### Mutual Mistake of Fact

■ Ocwen's primary argument is that the deed of trust does not reflect the parties' intent at the time of the settlement and should be reformed. Ocwen contends that the deed of trust, containing only Mr. Gilmore's signature, does not match the deed, containing the signatures of both spouses, due to a mutual mistake of fact that existed at the time of settlement.

The basic facts in this case are undisputed. The Gilmores entered into an agreement to purchase property in tenancy by the entirety on the condition that they receive third party financing.[4] Mr. Gilmore secured financing on the property from Ocwen and indicated to Ocwen that the property would be held in tenancy by the entirety. Ocwen provided financing to the Gilmores with the express understanding that the property would be held jointly with his wife.[5] Prior to settlement, all parties were clear that the property was to pass in tenancy by the entirety.

The facts leave no doubt to the court that the Gilmores intended to grant a security interest in their home to Ocwen. At hearing, Mrs. Gilmore stated that she would have signed the deed of trust if she had been asked to do so. Mrs. Gilmore's willingness to be bound absent Ocwen's negligence is evidence of her intent to sign the deed of trust and convey a security interest to Ocwen.

The settlement agent testified that he closed the loan and disbursed the proceeds before he received the deed and failed to compare the deed to the deed of trust. The debtors argue that his failure to secure both parties' signatures on the deed of trust prevented any transfer from taking place because both spouses must consent to any conveyance of property held in tenancy by the entirety.

■ Ocwen may have been negligent in securing Mrs. Gilmore's signature, but that alone is not sufficient to defeat its claim of a mutual mistake. " 'Negligence on the part of one party [which induces the mistake] does not preclude a finding of mutual mistake.' In other words, the fact that the mistake arises because the party who is seeking the reformation supplied the incorrect information does not make the mistake unilateral." *Lawyers Title Ins. Co. v. Golf Links Dev. Corp.,* 87 F.Supp.2d 505, 512 (W.D.N.C.1999) (*quoting Metropolitan Prop. & Cas. Ins. v. Dillard,* 126 N.C.App. 795, 487 S.E.2d 157, 159 (1997)).

The movant has met its burden of proof that there was a mutual mistake of fact. The facts clearly indicate that the Gilmores knew and intended that the loan from Ocwen would be secured by their property and that Ocwen intended to take a security interest in exchange for financing the purchase of the home.

Accordingly, the court finds that grounds for reformation exist, and the deed of trust will be reformed, retroactive to the settlement date, to add Goldie J. Gilmore as a grantor.

---

**4.** "A tenancy by the entirety 'is essentially a joint tenancy, modified by common law theory that husband and wife are one person.' " *U.S. v. Jacobs* 306 U.S. 363, 370, 59 S.Ct. 551, 83 L.Ed. 763 (1939). Neither party has the right to transfer or encumber the property

without the consent of the other. *See id.; see also Barclays Am./Mortgage Corp. v. Wilkinson* 186 B.R. at 190.

**5.** Exhibit D, Deed of Trust, p. 1.

*Unilateral Mistake*

The court does not find sufficient evidence to support Ocwen's alternate theory of unilateral mistake induced by fraud or improper conduct by the Gilmores. Ocwen made no showing that the debtors acted fraudulently or in bad faith. The error in this case is due to mistake of fact by both parties at the time of settlement.

*Improper Execution of Deed of Trust*

■ Debtors assert that Ocwen is an unsecured creditor and may not be given preference over any other unsecured creditor. Debtors claim that because the property was held in tenancy by the entirety and conveyed by only one party, the deed of trust was not properly executed. The court is unpersuaded by this argument. Having found that the debtors did intend to convey a security interest to Ocwen and that grounds for reformation do exist, the court disposes of debtors' argument without further discussion.

*Second Deed of Trust of Beneficial Mortgage Co. of Virginia*

Beneficial Mortgage Co. of Virginia, who holds a second deed of trust on debtors' property, defaulted in answer to the complaint and failed to appear at trial. Its interest will be subordinate to Ocwen's interest under the reformed deed of trust.

*Interest of Debtors' Trustee In Bankruptcy*

Any interest of the trustee will be subordinate to Ocwen's reformed first deed of trust.

A separate order will be entered.